**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| **DISTRICT OF COLUMBIA**, | |
| Plaintiff, | |
| v. | Case No.: 1:25-cv-03005 (JMC) |
| **DONALD J. TRUMP**, *et al.*, | |
| Defendants. | |

---

**PLAINTIFF DISTRICT OF COLUMBIA'S MOTION FOR
EXPEDITED DISCOVERY IN SUPPORT OF ITS PRELIMINARY
INJUNCTION MOTION, AND FOR SUPPLEMENTAL BRIEFING**

The District of Columbia respectfully moves the Court for an order granting expedited

discovery and related supplemental briefing in support of its motion for a preliminary injunction.[1]

At this moment, over 2,300 National Guard troops from eight states and the District are

patrolling District streets dressed in military fatigues, carrying firearms, and driving armored

vehicles.  Although these troops are nominally in state militia status, they are operating under the

command and control of the U.S. Army. And they are conducting core law enforcement activities,

including "presence patrols," "community patrols," surveillance, detentions, and other activities

to "deter crime" and support local and federal law enforcement.

This deployment of military force in the District is flatly unlawful. Congress made clear in

the Home Rule Act and the statutes governing the D.C. National Guard (DCNG) that the President

may employ DCNG to conduct law enforcement only in narrow circumstances not present here.

The Home Rule Act and the Emergency Management Assistance Compact also prohibit

---

[1] The District has conferred with counsel for the Defendants, who indicated that they oppose this motion.

1

Defendants from calling upon out-of-state National Guard troops to conduct law enforcement in the District over the District's objection. Further, the Constitution and the statutes governing the National Guard make clear that, unless National Guard troops have been called into federal service (which these troops have not been), day-to-day command must rest with the states, not the federal government. It is a fundamental tenet of American democracy—not to mention federal law—that, absent narrow exceptions, troops operating under the command of the U.S. military may not engage in domestic law enforcement. *See* 18 U.S.C. § 1385; 10 U.S.C. § 275.

Notably, this is the second time in recent months that Defendants have unlawfully used National Guard troops to conduct domestic law enforcement. In a case with substantial similarities to this one, a district judge in California found on September 2, 2025, that the federal government had violated the law by deploying the National Guard for law enforcement purposes. *Newsom v. Trump*, -- F. Supp. 3d -- , No. 25-cv-04870-CRB, 2025 WL 2501619 (N.D. Cal. Sept. 2, 2025). Over the defendants' objections, the *Newsom* court granted the plaintiffs expedited discovery to support their motion for a preliminary injunction, *Newsom*, 2025 WL 2250569, at *7 (N.D. Cal. June 25, 2025), which proved essential to the resolution of the case.

As in California, it is clear without discovery that legal violations are occurring in the District. But expedited discovery in support of the District's preliminary injunction motion is necessary to establish the extent to which National Guard troops are operating under federal command and control and the nature and scope of law enforcement activities in which they are engaged. Only the Defendants possess this information.[2] The District's proposed discovery is calibrated to illuminate these questions, but also time-limited and tailored to the declaratory and injunctive relief the District seeks. In light of the urgency of the issues, the imbalance of

---

[2] The District notes that before filing suit, it requested much of the information it seeks in discovery an August 20, 2025 letter to the Secretary of the Army, but received no response. *See* Haynes Decl. Ex. 44 (ECF No. 3-2).

information between the parties, the comparatively low burden of production for Defendants, and the strength of the District's case, expedited discovery is justified here. The District requests leave to conduct that discovery and to submit supplemental preliminary injunction briefing by October 13, 2025.

## BACKGROUND

### I.    Procedural History

On September 4, 2025, the District filed a complaint challenging the involuntary military occupation that Defendants ordered within its borders. (ECF No. 1). The complaint seeks declaratory and injunctive relief to preserve the District's sovereignty, stop Defendants' violations of law, and remedy the harms Defendants are inflicting on the District. *Id.*

On September 9, 2025, the District filed a motion for a preliminary injunction, seeking relief on its constitutional, *ultra vires*, and Administrative Procedure Act (APA) claims. (ECF No. 3). The District is seeking preliminary injunctive relief because Defendants' actions have undermined the District's sovereign right to control local policing, caused fear and uncertainty, threatened to erode public trust in law enforcement, and harmed the District's economy.

Now, the District seeks tailored discovery in support of its motion for a preliminary injunction. Concrete information about the command structure of the National Guard and what it has been ordered to do, by whom, and for how long, is solely within Defendants' possession. That evidence is central to establishing the District's entitlement to relief. The written and documentary discovery the District seeks is attached as Exhibit A to this motion. In addition, the District seeks to take three depositions of officials with knowledge of Defendants' conduct.

## II.    The District's Requested Discovery

The documents and information that the District seeks are intended to ascertain and confirm the extent of Defendants' command and control of National Guard troops operating in the District and the law enforcement activities that those troops have been authorized or directed to carry out. In order to supplement the record in support of the District's motion for preliminary injunction, the District requests leave to obtain the following discovery from Defendants:

**Requests for Production of Documents (17) & Interrogatories (18):** The District seeks documents and information that will confirm (a) the extent of federal command and control of National Guard units deployed to the District since August 11, 2025, (b) the extent to which these units have been conducting law enforcement activities in the District, (c) any training or policies applicable to these units in the execution of their activities in the District, and (d) the extent to which Defendants have made any efforts to comply with the PCA.

**Depositions (3):** The District seeks three depositions, which it will notice based on the written and document discovery, to obtain testimonial evidence regarding Defendants' unlawful conduct and plans and the resulting harms.

Notwithstanding the early posture of the case, the number of requests is reasonable under the circumstances. Notably, the court in *Newsom*, 2025 WL 2250569, at *7 (N.D. Cal. June 25, 2025), permitted the plaintiffs, the Governor and State of California, to serve 20 interrogatories and 16 requests for production of documents, focused solely on the question of whether the federal defendants there had violated the PCA. Here, although the District seeks documents and information related to a broader set of legal and factual issues, it seeks a similar number of discovery requests as in the *Newsom* case. Finally, the discovery the District seeks is targeted to uncover facts that will inform consideration of the District's motion for preliminary injunction.

Accordingly, the District asks the Court (a) to order Defendants to produce the documents and information requested in the District's written discovery requests on or by September 25, 2025; and (b) to authorize the District to take three depositions by no later than October 8, 2025, unless this Court subsequently extends that deadline for good cause.

## LEGAL STANDARD

"District courts enjoy broad discretion when deciding case management and scheduling matters." *McGehee v. U.S. Dep't of Justice*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019).

Federal Rule of Civil Procedure 26 provides this Court with the discretion to "dictate the sequence of discovery." *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007) (citation omitted). Expedited discovery is often "appropriate in some cases, such as those involving requests for a preliminary injunction." Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment.

To evaluate requests for expedited discovery, courts in this District generally employ a "reasonableness" test that considers "all of the surrounding circumstances," including five factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014) (citation omitted). These factors "provide 'guidelines for the exercise of the Court's discretion,'" but "[c]ourts are not limited to these factors." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (citation omitted).

## ARGUMENT

### I.    The District's Request for Expedited Discovery is Reasonable

The five "reasonableness" factors support the District's request for expedited discovery.

First, the District's motion for a preliminary injunction is pending, which "weighs in favor of granting" this motion. *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Pompeo*, No. 18-cv-01388 (TSC), 2019 WL 9598404, at \*2 (D.D.C. Jan. 30, 2019).

Second and third, the discovery sought here is "'narrowly tailored to reveal information related to the preliminary injunction'" and does not "seek[] information beyond the preliminary injunction scope." *See New Mexico v. Musk*, 770 F. Supp. 3d 192, 199 (D.D.C. 2025) (quoting *Guttenberg*, 26 F. Supp. 3d at 98). Information about the command structure governing the 2,300 National Guard troops deployed throughout the District, the orders those troops have received, and the activities they have undertaken is necessary to illuminate the extent to which the federal government is unlawfully commanding National Guard troops to carry out domestic law enforcement activities. The information is directly relevant to several of Plaintiff's claims, including the contention that Defendants have violated the Constitution and federal law by placing National Guard troops in state militia status under federal command and control, *see* Mem. in Supp. Mot. Prelim. Inj. (ECF No. 3-1) (PI Mot.) at 27-30, and the claim that Defendants have violated the Posse Comitatus Act (PCA) and 10 U.S.C. § 275 by granting the U.S. Army command and control over troops engaged in law enforcement activities, *see id.* at 30-37. These requests are relevant and proportional to the needs of the case, as they seek only the information reasonably necessary to establish these critical facts. *See New Mexico*, 770 F. Supp. 3d at 199. Only Defendants possess this information; it is unavailable from other sources. *See id*.

Similarly, discovery related to the Defendants' plans for the National Guard's ongoing and upcoming law enforcement activities is relevant and proportional to the needs of the case. Plaintiff contends that Defendants have acted unlawfully by assigning National Guard troops law

enforcement activities, both because they are engaged in policing that falls exclusively within the District's authority under the Home Rule and is unauthorized by the statutes governing the D.C. National Guard or 32 U.S.C. § 502(f), *see* PI Mot. 17-27, and because such activities violate the PCA and section 275, *see id.* at 30-37.  Although publicly available information already establishes that Defendants are violating these statutes, ascertaining the extent of Defendants' current and future law enforcement activities will materially assist the Court in evaluating these claims and the need for injunctive relief. It will also refine the issues before the Court and help the Court tailor appropriate relief for such violations.

Fourth, the burden on Defendants will not be onerous. The District primarily seeks operational documents that Defendants should have readily at hand, including protocols, orders, and training materials. In addition, these and the other documents and communications the District seeks are sharply time-limited, in that they pertain to events that have only been occurring for approximately one month. Likewise, the three depositions that the District plans to notice are not excessive.  The District Court in *Newsom v. Trump* ordered similar discovery in support of California's claims challenging the deployment of the National Guard in Los Angeles, and Defendants were able to produce thousands of pages of documents, respond to written discovery, and conduct depositions within just a few weeks.

Fifth, and finally, although the District's request for discovery comes at an early stage of the case, the urgency of the issues underlying this case "weigh[] heavily in favor of granting" this motion. *See Damus v. Nielsen*, 328 F.R.D. 1, 5 (D.D.C. 2018). The District faces an unprecedented incursion on its sovereignty and is currently under military occupation. The uninvited presence of more than 2,300 armed military troops on District streets and in District neighborhoods is intimidating, confusing, and profoundly un-American. This occupation infringes on the District's

sovereignty, undermines public safety, and damages the local economy. But because of the opaque nature of the National Guard's mission and orders, the information necessary to resolve this case is exclusively in Defendants' possession. Early discovery is therefore warranted here.

## II.    The District's Request for Expedited Discovery is Appropriate

The District's complaint and motion for a preliminary injunction seek relief based on three distinct causes of action: the Administrative Procedure Act (APA); constitutional violations; and equitable *ultra vires*. *See* Compl. ¶¶ 139-185; PI Mot. at 16-39. While courts typically do not permit discovery prior to the filing of the administrative record in APA cases, *see AFL-CIO. v. Dep't of Labor*, 349 F.R.D. 243, 248 (D.D.C. 2025), that general rule is not a bar here.

First, the District's non-APA causes of action are central to its case, and all of the discovery sought here goes to those claims. Indeed, the District brings claims against the President—the first named Defendant in this case—who is not an "agency" subject to the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992); *see Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022) (authorizing discovery because "this case involves not only an APA claim but also claims against a non-agency [defendant] under the Mandamus Act"). Moreover, evidence related to the Defendants' federal command and control of National Guard troops performing law enforcement functions goes to the heart of the District's *ultra vires* and constitutional claims, including claims related to violations of the Militia Clauses. *See* PI Mot. at 27-37. The District is therefore entitled to discovery on its non-APA claims. *See Mayor & City of Baltimore v. Trump*, 429 F. Supp. 3d 128, 141 (D. Md. 2019) (holding APA did not govern whether discovery was available on constitutional claims when plaintiff also alleged APA claims); *see also Am. First Legal*, 630 F. Supp. 3d at 187 (authorizing discovery where case involved claims under both the APA and the Mandamus Act and citing other examples).

8

Second, discovery is appropriate even as to the District's APA claims. "[T]his is not an ordinary APA case," and "[t]he agency action challenged here is unlike the actions normally challenged in APA cases, such as a promulgated regulation or a grant or denial of an application." *AFL-CIO*, 349 F.R.D. at 243. Here, the District challenges several final agency actions, including: (1) mobilizing the D.C. National Guard to police the District without the District's consent; (2) requesting out-of-state National Guard troops to enter and police the District without the District's consent; (3) placing all of the National Guard troops in the District under the command of the D.C. National Guard and the U.S. Army; (4) deputizing the National Guard troops as Special Deputy U.S. Marshals; and (5) ordering the National Guard troops to carry firearms. This case is therefore "unlike the typical APA case, which involves the enactment of a rule or other agency action taken in public view." *All. for Retired Ams. v. Bessent*, No. 25-0313, 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025). There is no traditional "administrative record" with particular or expected documents supporting the rationale for the final agency action. Here, "only the Defendants know the 'contours' of [their] actions," including the extent of command and control Defendants are exercising over National Guard troops in the District and the law enforcement activities the troops are undertaking. *See id.* (quoting *Venetian Casino Resort LLC v. EEOC*, 409 F.3d 359, 367 (D.C. Cir. 2005); *accord AFL-CIO*, 349 F.R.D. at 243. Accordingly, only discovery will permit the Court to fully "evaluate the reasonableness and lawfulness of Defendants" actions. *All. for Retired Ams.*, 2025 WL 1114350, at *3.

## CONCLUSION

The District respectfully requests leave to serve the attached discovery requests and notice three related depositions. The District further requests that the Court order the following:

1) Defendants shall file an opposition to this motion by September 11, 2025;

2) Defendants shall produce the documents requested in the District's Requests for Production on or by September 25, 2025;

3) Defendants shall respond to the District's Interrogatories on or by September 25, 2025;

4) Plaintiff may take up to three depositions, which shall occur no later than October 8, 2025;

5) The District shall file a supplemental brief in support of its Motion for a Preliminary Injunction, if needed, by October 13, 2025;

6) The Defendants shall file a response to the District's brief by October 17, 2025; and

7) The District shall file a reply by October 20, 2025.

Date:   September 9, 2025                 Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

EMMA SIMSON (D.C. Bar No. 1026153)
MITCHELL P. REICH (D.C. Bar No. 1044671)
Senior Counsels to the Attorney General

*/s/ Eliza H. Simon*
ELIZA H. SIMON (D.C. Bar No. 90035651)
Senior Counsel to the Attorney General

BENJAMIN MOSKOWITZ (D.C. Bar No. 1049084)
Assistant Deputy Attorney General
Legal Counsel Division

ALICIA M. LENDON (D.C. Bar No. 1765057)
Chief, Civil Rights and Elder Justice Section
Public Advocacy Division

*/s/ Andrew Mendrala*
ANDREW MENDRALA (D.C. Bar No. 1009841)
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, D.C. 20001
Tel: (202) 724-9726
andrew.mendrala@dc.gov

*Attorneys for the District of Columbia*

**LCvR7(m) Statement**

The District sought consent to this Motion from all Defendants, and Defendants do not consent.

/s/ Pamela A. Disney
PAMELA A. DISNEY
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2025, a true and correct copy of the foregoing was filed with the Clerk of Court and served electronically via CM/ECF upon all counsel of record.

/s/ Pamela A. Disney
PAMELA A. DISNEY
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DISTRICT OF COLUMBIA**, | |
| Plaintiff, | |
| v. | Case No.: 1:25-cv-03005 (JMC) |
| **DONALD J. TRUMP**, *et al.*, | |
| Defendants. | |

**[PROPOSED] ORDER**

Plaintiff the District of Columbia's Motion for Expedited Discovery in Support of Its Preliminary Injunction Motion, and for Supplemental Briefing is **GRANTED**.

It is **ORDERED** that the District of Columbia may serve the discovery requests attached to its motion as Exhibit A.  It is further **ORDERED** that:

1) Defendants shall file an opposition to the District's Motion or Expedited Discovery in Support of Its Preliminary Injunction Motion by September 11, 2025;

2) Defendants shall produce the documents requested in the District's Requests for Production on or by September 25, 2025;

3) Defendants shall respond to the District's Interrogatories on or by September 25, 2025;

4) Plaintiff may take up to three depositions, which shall occur no later than October 8, 2025;

5) The District shall file a supplemental brief in support of its Motion for a Preliminary Injunction, if needed, by October 13, 2025;

6) The Defendants shall file a response to the District's brief by October 17, 2025; and

1

7) The District shall file its reply in support of its supplemental brief in support of its Motion for a Preliminary Injunction by October 20, 2025.

**SO ORDERED.**

Date: _____

_____
JIA M. COBB
United States District Judge

2