## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **District of Columbia**, <br><br> Plaintiff, <br><br> v. <br><br> **Donald Trump** *et al.*, <br><br> Defendants. | Civil Case No. 25-cv-3005 |

**BRIEF OF DEMOCRACY FORWARD FOUNDATION
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION AND 705 STAY**

**CORPORATE DISCLOSURE STATEMENT**

    Amicus Democracy Forward Foundation is a nonprofit. It has no parent corporations and no publicly held corporation owns any portion of it.

i

## TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................................................. i

Table of Authorities ................................................................................................................. iii

Interest of Amicus Curiae ......................................................................................................... 1

Introduction .............................................................................................................................. 1

Argument .................................................................................................................................. 2

    A.    The Constitution permits states to maintain their own militias, which later become the National Guard. ........................................................................................ 3

    B.    The Office of Legal Counsel adopts the legal fiction that the D.C. National Guard can exist as something other than a part of the Army. ........................................ 5

Conclusion ................................................................................................................................ 8

## TABLE OF AUTHORITIES

**Cases**

*Perpich v. Dep't of Def.*,
    496 U.S. 334 (1990) .................................................................................................. 3, 4

*United States v. Hutchings*,
    127 F.3d 1255 (10th Cir. 1997) ............................................................................... 5, 6, 8

**Constitutional and Statutory Provisions**

U.S. Const. art. I, § 8, cl. 12 ................................................................................................ 4

U.S. Const. art. I, § 8, cl. 15 ................................................................................................ 5

U.S. Const. art. II, § 2, cl. 1 ................................................................................................ 5

18 U.S.C. § 1385 ............................................................................................................. 1, 2

D.C. Code § 49-103 ............................................................................................................ 7

D.C. Code § 49-305 ............................................................................................................ 7

D.C. Code § 49-409 ............................................................................................................ 7

Militia Act of 1903, Pub. L. No. 57-33, 32 Stat. 775 ......................................................... 5

**Legislative Materials**

James Brown Scott, *The Militia: Extracts from the Journals and Debates of the
    Federal Convention, the State Constitutional Conventions, the Congress, the
    Federalist, Together with Papers Relating to the Militia of the United States*,
    S. Doc. No. 695, 64th Cong. (1917) ............................................................................ 4

**Executive Materials**

Exec. Order No. 11,485, 34 Fed. Reg. 15,411 (Oct. 1, 1969) ............................................ 7

Exec. Order No. 14,339, 90 Fed. Reg. 42121 (Aug. 25, 2025) ........................................ 10

*Use of the National Guard to Support Drug Interdiction Efforts in the District of
    Columbia*, 13 Op. O.L.C. 91 (1989) .................................................................... 2, 5, 6

*Mil. Support for Customs & Border Prot. Along the S. Border Under the Posse
    Comitatus Act*, 2021 WL 298369 (O.L.C. Jan. 19, 2021) ........................................... 6

**Other Authorities**

1 Gian Gentile et al., *The Evolution of U.S. Military Policy from the Constitution to the Present* (2020), https://perma.cc/H5EM-NGSU ................................................................ 3

3 *The Debates on the Adoption of the Federal Constitution* (Jonathan Elliot, ed., 1863) ........................................................................................................................ 4, 5

D.C. Nat'l Guard, News, National Guard Authorized To Carry Weapons in Support of Law Enforcement (Aug. 23, 2025), https://perma.cc/D5AM-BV9H .................................. 1

*Establishing the militia*, D. C. Nat'l Guard, https://perma.cc/WT49-9ZSA .................................. 7

George Washington, *Sentiments on a Peace Establishment* (1783), https://perma.cc/JE8Y-JLT2 ............................................................................................ 3

Mem. for Sec'y of the Army et al. on Supervision and Control of the National Guard of the District of Columbia (Oct. 10, 1969), https://perma.cc/7C7R-6GJA ............................. 7

Mem. for the Sec'y of Defense, Restoring Order in the District of Columbia (Aug. 11, 2025), https://perma.cc/2JZQ-U6T7 ................................................................................ 1

National Guard, *Army National Guard*, https://perma.cc/J4U6-J5VV .......................................... 3

*The Federalist No. 25* (Alexander Hamilton) ................................................................................ 4

*The Federalist No. 46* (James Madison) ...................................................................................... 4

**INTEREST OF AMICUS CURIAE**[1]

Democracy Forward Foundation is a nonprofit national legal organization that advances democracy and social progress through litigation, policy and public education, and regulatory engagement. DFF represents clients, including nonprofits, local governments, tribes, small businesses, unions, and individuals, in challenging harmful and unlawful governmental action and in supporting governmental action. DFF's advocacy for democratic governance aligns with the Framers' view that a city under the control of a standing army is inconsistent with freedom and liberty.

**INTRODUCTION**

For more than a month, the D.C. National Guard has been mobilized in the District of Columbia; on the order of the President, the National Guard will remain here until he "determine[s] that conditions of law and order have been restored in the District of Columbia." Mem. for the Sec'y of Defense, Restoring Order in the District of Columbia (Aug. 11, 2025), https://perma.cc/2JZQ-U6T7. At the direction of U.S. Army Brigadier General Leland D. Blanchard II, the Commanding General (Interim) of the D.C. National Guard, Guardsmen have been authorized "to carry weapons in support of law enforcement" as they patrol the streets of the District. D.C. Nat'l Guard, News, National Guard Authorized To Carry Weapons in Support of Law Enforcement (Aug. 23, 2025), https://perma.cc/D5AM-BV9H.

It has long been prohibited for "any part of the Army" to "execute the laws," unless "expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385. It nevertheless appears to be the position of the United States, according to a 1989 opinion by the Office of Legal Counsel,

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus, its members, or its counsel made a monetary contribution intended to fund the brief's preparation or submission. The parties have consented to the filing of this brief.

1

that the D.C. National Guard is not "any part of the Army" (or any of the other service branches) when it operates in its "state" militia capacity.

The OLC opinion is incorrect. State militias survived the ratification of the Constitution as organs of the sovereignty of the states. But the D.C. National Guard is—uniquely—always under the control of the President. So although there are multiple statutes that can be invoked to activate the D.C. National Guard, each involves serving the President and the sole authority of the United States.

This brief is submitted for the limited purpose of explaining why the Court should reject OLC's misguided framework for deeming the PCA inapplicable to the D.C. National Guard when operating in its militia capacity.

## ARGUMENT

Civilian control of civil society is a core value of our system of government. Since the end of Reconstruction, Congress has provided by statute that the military may not be used for purposes of civil law enforcement. Under the terms of the Posse Comitatus Act (PCA), Congress has prohibited the use of "any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force" to "execute the laws," unless "expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385.

OLC has nevertheless taken the position that the D.C. National Guard—a force operating permanently under the authority of the President and the Secretary of the Army—is exempt from the PCA and may be deployed to "execute the laws" so long as it acts "in its militia status (*i.e.*, not in federal service)." *Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia*, 13 Op. O.L.C. 91, 92 (1989).

This position is dangerously incorrect and has caused great harm to the District. The D.C. National Guard is under the perpetual control of the United States. Its actions are therefore always subject to the restrictions of the PCA.

**A. The Constitution permits states to maintain their own militias, which later become the National Guard.**

Today, the Army National Guard describes itself as "the oldest component of the U.S. Armed Forces," founded in 1636, and "the primary combat reserve of the U.S. Army." National Guard, *Army National Guard*, https://perma.cc/J4U6-J5VV. But the history of the National Guard reflects a compromise at the Nation's founding that was responsive to the dual sovereignty of the state and federal governments.

The Nation's founding generation was attuned to the costs of a militarized society. As George Washington explained, "a large standing army in time of Peace hath ever been considered dangerous to the liberties of a Country." George Washington, *Sentiments on a Peace Establishment* (1783), https://perma.cc/JE8Y-JLT2. When the Framers drafted the Constitution, they, likewise, "shared an antipathy toward the idea of having a large standing army and favored relying on organized militias." 1 Gian Gentile et al., *The Evolution of U.S. Military Policy from the Constitution to the Present* 12 (2020), https://perma.cc/H5EM-NGSU. They were divided, however, on whether there should be any standing army and whether the state militias should be regulated by the federal government.

On one side, the Federalists recognized "the danger of relying on inadequately trained soldiers as the primary means of providing for the common defense." *Perpich v. Dep't of Def.*, 496 U.S. 334, 340 (1990). As Alexander Hamilton put it, "[t]he steady operations of war against a regular and disciplined army can only be successfully conducted by a force of the same kind." *The*

3

*Federalist No. 25* (Alexander Hamilton); *see also The Federalist No. 46* (James Madison) (favoring a standing regular army).

On the other side, the Anti-Federalists worried that ceding the state militias to the Federal Government would be the death knell of state sovereignty. Elbridge Gerry, for example, argued that the states' very existence depended on their militias and that, without them, the Federal Government "may enslave the States." James Brown Scott, *The Militia: Extracts from the Journals and Debates of the Federal Convention, the State Constitutional Conventions, the Congress, the Federalist, Together with Papers Relating to the Militia of the United States*, S. Doc. No. 695, 64th Cong. 31 (1917). Oliver Ellsworth argued that "[i]t must be vain to ask the States to give the Militia out of their hands" because, without the militia, the State "would pine away to nothing." *Id.* at 33. And John Dickenson argued "that the States never would nor ought to give up all authority over the Militia." *Id.*; *see also* 3 *The Debates on the Adoption of the Federal Constitution* 401 (Jonathan Elliot, ed., 1863) (quoting Edmund Randolph at Virginia's ratification convention as saying that "there was not a member in the federal Convention, who did not feel indignation" at the idea of a standing Army).

Ultimately, to avert the "intolerable threat to individual liberty and to the sovereignty of the separate States," *Perpich*, 496 U.S. at 340, the Framers delegated to Congress the authority to "raise and support Armies," art. I, § 8, cl. 12, but reserved to the States the appointment of officers and the training of the separate militias, "according to the discipline prescribed by Congress," art. I, § 8, cl. 16. Reflecting our system of dual sovereigns, the state militias may be incorporated into the Federal Army, as the Constitution gave to Congress the "Power . . . To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions," art. I, § 8, cl. 15, and designated the President as "Commander in Chief of the Army and the Navy of the

4

United States, and of the Militia of the several States, when called into the actual Service of the United States," art. II, § 2, cl. 1. As described by James Madison: "I cannot conceive that this Constitution, by giving the general government the power of arming the militia, takes it away from the state governments. The power is concurrent, and not exclusive." 3 Elliot, *supra*, at 382.

The National Guard system reflects the evolution of the militias that were preserved in the Constitution.[2] Until "ordered into active federal duty by an official acting under a grant of statutory authority from Congress," *United States v. Hutchings*, 127 F.3d 1255, 1258 (10th Cir. 1997), national guards serve their respective states. Title 10 of the U.S. Code puts any national guard called into federal service under the control of the President and the federal military establishment. And Title 32 of the U.S. Code creates a hybrid state-federal militia status by which governors grant the President use of the state national guards.

 **B. The Office of Legal Counsel adopts the legal fiction that the D.C. National Guard can exist as something other than a part of the Army.**

In a 1989 memo, DOJ's Office of Legal Counsel considered whether it would violate the PCA to use the D.C. National Guard to support the drug-enforcement efforts of the Metropolitan Police Department. Op. O.L.C. at 91, 92. OLC concluded that it would not for two reasons. *First*, OLC reasoned that the PCA would not apply because using the D.C. National Guard to support drug-enforcement efforts would be using it "in its militia rather than federal service capacity." *Id.* at 92. *Second*, OLC reasoned that even if the PCA applied, Congress authorized the D.C. National Guard

---

[2] Under the Militia Act of 1903, Pub. L. No. 57-33, 32 Stat. 775, the "organized militia" became "known as the National Guard of the State, Territory, or District of Columbia."

5

to engage in law-enforcement activities. *Id.* at 93. This brief is limited to addressing the first justification, which Defendants have seemingly relied upon for the current deployment.[3]

The OLC memo's primary conclusion is that the PCA does not apply because in assisting the Metropolitan Police Department, the D.C. National Guard would be acting in state-militia status and would therefore not constitute "any part of the Army" so as to trigger the PCA. But as the District correctly highlights in its brief (at 36 n.14)—and OLC has otherwise acknowledged, *see Mil. Support for Customs & Border Prot. Along the S. Border Under the Posse Comitatus Act*, 2021 WL 298369, at *17 (O.L.C. Jan. 19, 2021)—whether the National Guard is part of the Army under the PCA turns on whether the National Guard is under the "command and control" of the Federal Army or the State Governor. *See, e.g.*, *Hutchings*, 127 F.3d at 1258.

So the question under the PCA is not, as OLC assumes, whether the National Guard is given the label of acting in state-militia status or federal status. The dichotomy between state-militia and federal status is reasonable for state national guards, which, as a baseline, act under state control. State national guards "do not become part of the Army itself until such time as they may be ordered into active federal duty by an official acting under a grant of statutory authority from Congress." *Id.* But OLC ignores that the D.C. National Guard is unlike the state national guards. As the D.C. National Guard itself explains:

> Normally, American federal law specifically charges the U.S. National Guard with dual federal and state missions. As the U.S. federal government abolished the jurisdiction of the state of Maryland and states rights in Washington, D.C. to establish a federal district, there is no elected governor to command this guard unit. The District of Columbia National Guard is the only National Guard that reports only to the U.S. President.

---

[3] Because the District aptly explains why the D.C. Code provisions relied on by OLC do not give express authority to broadly enforce civil law, *see, e.g.*, D.C. PI Br. 20-22, 31-32, amicus does not repeat those arguments here.

6

Case 1:25-cv-03005-JMC    Document 23-1    Filed 09/15/25    Page 12 of 13

D.C. Nat'l Guard, *Establishing the Militia*, https://perma.cc/WT49-9ZSA.

Unlike the states, the District does not control its National Guard. In addition to reporting to the President, D.C. Code § 49-409 ("The President of the United States shall be the Commander-in-Chief of the militia of the District of Columbia."), the D.C. National Guard lacks the other markers of existing or operating outside the control of the Federal Government. The President commissions all officers of the D.C. National Guard. D.C. Code § 49-305. The President has the direct power to order the D.C. National Guard into service. *Id.* The D.C. National Guard does not answer to the Mayor; its only patron is the President, who has directed the D.C. National Guard to report, in its militia capacity, through the Secretary of Defense, *see* Exec. Order No. 11,485, 34 Fed. Reg. 15,411 (Oct. 1, 1969), who, in turn, has delegated command authority to the Secretary of the Army, *see* Mem. for Sec'y of the Army et al. on Supervision and Control of the National Guard of the District of Columbia (Oct. 10, 1969), https://perma.cc/7C7R-6GJA. And if the Mayor wants to call upon the D.C. National Guard, she can only request that the President exercise his exclusive authority. *See, e.g.*, D.C. Code § 49-103.

Governing statutes beyond Title 49 of the D.C. Code also vest in the President all power over the D.C. National Guard. As previously mentioned, under Title 10, the President can call any National Guard, including the D.C. National Guard, into federal service. And although Title 32 gives a governor discretion to refuse a request from the President, *see* D.C. PI Br. 13 (citing Haynes Decl. Exs. 11-20, 45-46), that discretion is a nullity for the D.C. National Guard. Because the President is at all times the Commander in Chief of the D.C. National Guard, he plays the same role that a state governor does over a state national guard. That means that under Title 32, the

7

President asks himself to deploy the D.C. National Guard, highlighting that the D.C. National Guard is always in federal service.[4]

Put simply, OLC's opinion commits an error at the threshold—it presumes that there *is* such a thing as non-federal service for the D.C. National Guard. But the President is the Commander-in-Chief regardless of the capacity in which the D.C. National Guard is serving. The D.C. National Guard operates perennially through a federal chain of command. And whenever the D.C. National Guard is ordered into duty, that order comes from "an official acting under a grant of statutory authority from Congress." *Hutchings*, 127 F.3d at 1258. So the D.C. National Guard is always a "part of the Army" of the United States for purposes of the PCA and it may engage in law-enforcement activities only as expressly authorized by the Constitution or Act of Congress.

## CONCLUSION

The Court should conclude that the D.C. National Guard is in federal service and subject to the PCA.

September 15, 2025

Respectfully submitted,

 /s/Bradley Girard 
Bradley Girard (DC Bar No. 1033743)
Brian D. Netter (DC Bar No. 979362)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bgirard@democracyforward.org
bnetter@democracyforward.org

*Counsel for Amicus*

---

[4] Nevertheless, President Trump relied on Title 32 to order the D.C. National Guard into service. *See* Exec. Order No. 14,339, 90 Fed. Reg. 42121 (Aug. 25, 2025).

8