UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,

        Plaintiff,

    v.                                                    Civil Action No. 1:25-cv-03005-JMC

DONALD J. TRUMP, *et al.*,

        Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

## INTRODUCTION

On the same day it asked this Court to preliminarily enjoin Defendants, Plaintiff moved to expedite discovery in support of the preliminary injunction motion it already filed. Specifically, Plaintiff would like to propound 17 requests for production of documents and 18 interrogatories (not counting subparts). Collectively, these requests seek an extraordinarily broad universe of documents and communications relating to essentially every aspect of the deployment of the National Guard in the District, including all on-the-ground operations. Plaintiff also seeks three depositions of undefined scope. The breadth of Plaintiff's proposed discovery would normally necessitate a discovery window of several months, but Plaintiff seeks to cram it into a few weeks, with post-discovery briefing closing on October 20. *See* Pl.'s Mot. for Expedited Disc. at 10, ECF No. 4; *id.* (Proposed Order). That schedule—which would be impossible for Defendants to comply with—is inconsistent with this Court's local rules providing that preliminary injunction hearings should be held within 21 days of the filing of a preliminary injunction motion. *See* L. Cv. R. 65(d).

Setting aside Plaintiff's lack of urgency and apparent preference for discovery over the timely resolution of their preliminary injunction motion, the discovery Plaintiff seeks is entirely unnecessary and inappropriate. As reflected in Defendants' substantive brief, Plaintiff's claims fail out of the gate; this case can and should be dismissed. And consistent with the general practice in this District, discovery should not proceed while that motion to dismiss is pending. Discovery is also inappropriate because Plaintiff's claims sound primarily in the Administrative Procedure Act ("APA"), under which review is limited to an administrative record. Although Plaintiff also asserts constitutional and ultra vires claims, those claims are entirely derivative of Plaintiff's APA contrary-to-law claims, and the ultra vires claim would not be permitted to go forward if Plaintiff has an adequate alternative remedy under the APA.

At the very least, the motion is procedurally and substantively defective. Plaintiff seeks discovery before the parties' Rule 26(f) conference and while a motion to dismiss is pending. The discovery is also unduly burdensome and grossly overbroad, even if there were some narrow slice of the case as to which discovery would be appropriate (there is not). If discovery is allowed, Plaintiff's proposed deadlines would need to be extended significantly. But in any event, consideration of these subsidiary questions is not needed. Discovery is categorically unnecessary to resolve the preliminary injunction motion and is improper while Defendants' motion to dismiss the Complaint is pending. The motion should be denied.

## BACKGROUND[1]

Plaintiff filed this action on September 4, ECF No. 1 ("Compl." or "Complaint"), asserting claims against President Trump; against the Department of Defense[2], Secretary Hegseth, the Army, and Army Secretary Daniel Driscoll (collectively, "DoD Defendants"); and against the Department of Justice, Attorney General Bondi, as well as the United States Marshals Service and its Director (collectively, "DOJ Defendants").

The Complaint asserts four claims. The first, an APA claim against the DOJ and DoD Defendants, contends that the deployment of the National Guard and out-of-state troops is contrary to law and violates the District of Columbia Self–Government and Governmental Reorganization Act

---

[1] Although we generally address only the relevant procedural background here, we note that the District's contention (which it states three times) that it is under military "occupation" is uncalled for and, indeed, inflammatory. As the government outlined in its brief filed yesterday, Guard personnel are not making arrests, conducting searches and seizures, or making decisions on whether to arrest, prosecute, or investigate crime, decisions that remain with the Metropolitan Police Department ("MPD"). They are in fact working closely with and coordinating all of their limited activities with the MPD, and the MPD is sharing information with Guardsmen on a daily basis.

[2] On September 5, President Trump issued an Executive Order authorizing the agency to use a secondary title—the Department of War—in certain contexts. For ease of reference, this brief describes the parties consistent with how the D.C. Attorney General has named them.

("Home Rule Act") and the Emergency Management Assistance Compact ("EMAC").[3] Plaintiff further asserts that Defendants have acted unlawfully by assuming command and control over out-of-state Guard units in Title 32 status, which allegedly violates the Posse Comitatus Act ("PCA"). Compl. ¶¶ 139-58. The second claim, also against the DoD and DOJ Defendants and also purportedly asserted under the APA, contends that the Guard's deployment is "arbitrary and capricious" because it supposedly deviates from prior practice, because the Guardsmen allegedly lack sufficient training, because Defendants supposedly failed to weigh the costs and benefits of operational decisions (such as the specific types of guns given to Guardsmen), and allegedly failed to consider relevant factors. *Id.* ¶¶ 159-67. The third claim, against all Defendants, asserts constitutional violations, specifically the constitutional separation of powers doctrine, the Take Care Clause, and the District Clause. *Id.* ¶¶ 168-79. Finally, Plaintiff purports to assert an equitable "ultra vires" claim against all Defendants. *Id.* ¶¶ 180-85.

On September 9, the District moved for a preliminary injunction, requesting, among other relief, that the Court enjoin Defendants from deploying Guard troops "to conduct law enforcement in the District of Columbia without the express consent of the Mayor." Pl.'s Mot. for Prelim. Inj. at 1, ECF No. 3. Yesterday, Defendants opposed that motion and simultaneously moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6). On the same day it moved for a preliminary injunction, Plaintiff separately moved for expedited discovery, which we now oppose.

---

[3] The EMAC is an interstate compact between all 50 states, the Commonwealth of Puerto Rico, the District, and all U.S. territorial possessions.

**ARGUMENT**

I.    **Discovery is Unnecessary Because Plaintiff's Claims Fail As a Matter of Law, and Discovery is Not Needed to Decide the Preliminary Injunction Motion.**

Discovery is plainly unnecessary in this case generally, and unnecessary to decide Plaintiff's preliminary injunction motion in particular. The Complaint and preliminary injunction motion assert that the deployment of the D.C. National Guard and use of Guardsmen from six other states violates the Home Rule Act, the EMAC, and the PCA, as well as violates the Constitution and is ultra vires. Our combined opposition to the preliminary injunction motion and brief in support of the motion to dismiss, filed yesterday, explains why none of these claims are legally viable:

- Under the Home Rule Act, the President is the Commander-in-Chief of the D.C. National Guard and exercises authority over the D.C. National Guard just as a state's governor exercises authority over their state's National Guard. In the Home Rule Act, Congress delegated limited legislative and executive authority to elected officials, but it made clear that the District government may not exercise "any greater authority over . . . the National Guard of the District of Columbia," than it did prior to Home Rule.

- As to the EMAC, that document provides a mechanism for parties to the compact to request assistance from other parties, but the compact does not restrict the power of the President at all, let alone override the President's authority as Commander in Chief of the D.C. National Guard or require the President to obtain the consent of a local official before exercising his express statutory authority.

- Plaintiff's contention that Defendants have unlawfully assumed command of out-of-state National Guard units in Title 32 status has no basis in law or fact, because the out-of-District Guardsmen are merely coordinating their efforts with the D.C. National Guard and there is in any event no legal requirement that they be subject to their governor's day-to-day control.

- The PCA is a criminal statute that Plaintiff cannot civilly enforce against the federal government, it does not apply to Guardsmen in a Title 32 status, the D.C. Guard is in any event expressly authorized by law in multiple provisions to engage in law-enforcement activity, and the Complaint does not adequately plead (or even attempt to plead) the requisite willfulness.

- Plaintiff's "arbitrary and capricious" APA claim fails because it targets Presidential action which is not subject to the APA, and otherwise constitutes an impermissible programmatic attack on ongoing agency activities—not a claim directed at discrete final agency actions subject to challenge under the APA.

- Plaintiff's constitutional claims are entirely derivative of—and dependent on—Plaintiff's assertion that the Defendants' actions are contrary to federal statutes, and any truly freestanding constitutional claims would fail as a matter of law in any event.

- Plaintiff's "ultra vires" claim plainly fails as a matter of law and also cannot be maintained if Plaintiff has an alternative remedy under the APA.

Defs.' Combined Mem. in Opp'n to Mot. for Prelim. Inj. & in Supp. of Mot. to Dismiss at 16-35, ECF No. 34.

These legal arguments were presented in Defendant's filing yesterday, and Defendants do not separately elaborate on them here. But the salient point for purposes of the discovery motion is that the disputes between the parties that the Court is called upon to resolve are primarily *legal* disputes about the meaning of federal statutes and other sources, not factual questions that discovery is needed to resolve. Both parties have now filed lengthy briefs addressing the legal questions bearing on that motion. The Court should decide those legal questions on the basis of the papers submitted and any hearing it may hold. Discovery is unnecessary and should not be permitted.

Plaintiff's suggestion that the Court should order discovery even before ruling on the motion for a preliminary injunction that Plaintiff has filed finds no support in the Northern District of California's decision in *Newsom v. Trump*, -- F. Supp. 3d -- , No. 25-cv-04870-CRB, 2025 WL 2501619 (N.D. Cal. Sep. 2, 2025), *appeal filed*, No. 25-5553 (9th Cir. Sep. 3, 2025). There, the district court authorized discovery as to one part of one of the plaintiffs' claims (plaintiffs' PCA ultra vires claim) only after (1) it ruled on the plaintiffs' motion for a temporary restraining order on different claims, (2) it determined the record submitted by the parties was insufficient to rule on the PCA, and (3) the Court of Appeals stayed the district court's interim injunction. But here, the District simultaneously maintains that its motion for a preliminary injunction proves its entitlement to that remedy and that discovery is necessary for the Court to consider whether a preliminary injunction should issue.

Even as to the District's PCA claim, the *Newsom* opinion is unhelpful because the District's PCA claim fails as a matter of law for reasons that were not applicable to the use of the Guard in California. Members of the California National Guard were federalized under Title 10. The purely legal argument that the PCA does not apply to guardsmen in a Title 32 status was not before that court. *See Mueller v. City of Joliet*, 943 F.3d 834, 837 (7th Cir. 2019) (holding that Posse Comitatus Act "does not apply to Title 32 National Guard duty"). And as outlined in Defendants' filing yesterday, there are multiple other reasons the District's PCA claim fails as a matter of law. Additional federal statutes expressly authorize law enforcement execution for PCA purposes; those statutes, part of the D.C. Code, are applicable in the District but not in California, and they present additional purely legal grounds for dismissal of the PCA claim here that also were not present in that case.

In addition to proposing discovery exponentially broader than that authorized in *Newsom*, Plaintiff here also seeks discovery from the *White House*. California received discovery only from DoD, with the exception of one deposition of a DHS official who filed a declaration on the federal government's behalf. The District's request for discovery from a White House component—indeed, from the President himself—contravenes "[t]he high respect that is owed to the office of the Chief Executive," which "is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). That office's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 753 (1982). This Court should not permit the District to obtain any discovery from the White House.

Regardless, the district court's allowance of discovery in *Newsom* was unorthodox and wrong, as Defendants argued in that case. A unanimous Ninth Circuit panel stayed the district court's first injunction in full in a published opinion. *Newsom v. Trump*, 141 F.4th 1032, 1040-41 (9th Cir. 2025) (per curiam). And a unanimous Ninth Circuit panel has also since administratively stayed that district

6

court's second injunction. *See* Order, *Newsom v. Trump*, No. 25-5553, ECF No. 7.1 (9th Cir. Sep. 4, 2025). This Court should not emulate *Newsom*. Instead, it should decide the legal issues presented by Defendants' motion to dismiss and Plaintiff's motion for a preliminary injunction and deny the motion for discovery.

## II.    Discovery is Unwarranted Because Plaintiff Asserts APA Claims.

The discovery Plaintiff seeks is particularly and independently unwarranted because it would not be available *even if* the case proceeded past the motion-to-dismiss stage. Of Plaintiff's four claims, the first two are APA claims. Typically, the record in an APA suit is limited to the "information" before the "agency when it made its decision." *Hill Dermaceuticals v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). Discovery is "unavailable in APA cases, except in two circumstances: (1) where the party seeking discovery makes a strong showing of bad faith or improper behavior; or (2) in the rare case in which the record is so bare as to frustrate judicial review." *Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*, No. 25-1775 2025 WL 2374528, at *40 (D.D.C. Aug. 14, 2025) (citation modified). Plaintiff does not even attempt to show that either of these two exceptions would be applicable here.

It is true that Plaintiff also asserts constitutional claims and an ultra vires claim. Regarding the former, Plaintiff contends that "[t]he Executive violates the Take Care Clause where it overrides statutes enacted by Congress and signed into law or duly promulgated regulations implementing such statutes." Compl. ¶ 174. Plaintiff asserts that Defendants violated the District Clause because they are undertaking activities that are not permitted by the Home Rule Act. *Id.* ¶ 175. And Plaintiff claims that Defendants have "disregarded the limits in the Posse Comitatus Act and 10 U.S.C. § 275 barring the participation of federal military forces in law enforcement; and attempted to supplant the Mayor's authority over law enforcement in the District." *Id.* ¶ 177. But these allegedly constitutional claims are wholly derivative of Plaintiff's APA contrary-to-law claims and are therefore improper. *See Dalton v.*

*Specter*, 511 U.S. 462, 473 (1994) ("claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims"); *Glob. Health Council v. Trump*, --- F.4th ----, Nos. 25-5097, 25-5098, 2025 U.S. App. LEXIS 20495, at *6 (D.C. Cir. Aug. 13, 2025) (holding that "[parties] may not bring a freestanding constitutional claim if the underlying alleged violation and claimed authority are statutory . . . . and . . . may not reframe this fundamentally statutory dispute as an ultra vires claim either"), *modified by* Nos. 25-5097, 25-5098, 2025 U.S. App. LEXIS 22288 (D.C. Cir. Aug. 28, 2025). And as to the ultra vires claim, that claim is likewise both purely legal in nature, and entirely derivative of Plaintiff's contrary-to-law claim. In any event, ultra vires review is not available where a plaintiff has an alternative path to judicial review. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 682 (2025). So, if Plaintiff's APA claims survived a motion-to-dismiss, there would be no basis to allow the ultra vires claim to go forward.

### III.    The Discovery is at Least Premature.

At the very least, Plaintiff's request for discovery now is premature. Both the Federal Rules of Civil Procedure and the Local Rules of this Court provide that, absent unusual circumstances not present here, discovery should not proceed before the parties have conferred as required by Federal Rule of Civil Procedure 26(f). The Federal Rules provide that "[a] party *may not* seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1) (emphasis added). Similarly, this Court's Local Rules mandate that "[e]xcept in categories of proceedings exempted from initial disclosure . . . , or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any sources before the parties have conferred as required by Fed. R. Civ. P. 26(f)." L Cv. R. 26.2(a).

Plaintiff's request for expedited discovery here "arrives before this Court has held an initial scheduling conference with the parties pursuant to Federal Rule of Civil Procedure 16(b) and discussed the parameters of discovery." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 101 (D.D.C. 2018). "Generally such expedited discovery is not permissible, though the Court may grant an exception." *Id.* at 101.

Moreover, the Court's Local Rules establish that civil cases in which "defendants have not yet answered" are exempt from "[t]he requirements of" Rule 26(f). L. Cv. R. 16.3(b). Therefore, in this District, when a motion to dismiss is pending—and thus the defendants have not yet answered—the defendants are not required to participate in a Rule 26(f) conference and, accordingly, are not required to participate in discovery. The Local Rules establish the sensible general rule that discovery should not proceed when a motion to dismiss is pending that could dispose of the case. *See Chavous v. Dist. of Columbia Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citing the "eminently logical" principle that "discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending") (citations omitted).

To be sure, these principles are not absolute. In determining whether to grant an exception to the general rule that "expedited discovery is not permissible," the Court applies a "reasonableness test" that is "consistent with the good cause standard for issuing a protective order, an arguably analogous context." *Dunlap*, 319 F. Supp. 3d at 101, 104. This test includes an examination of the following factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 104 (citation omitted). "Courts are not limited to these factors but instead are empowered to employ them as guidelines for the exercise of the Court's discretion." *Pinson v. U.S. Dep't of Justice*, No. 18-486, 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) (citation and internal quotation marks

omitted). All these factors weigh against allowing an exception to the general rule barring discovery before the parties' Rule 26(f) conference.

*First*, although Plaintiff has moved for a preliminary injunction, that motion is capable of resolution on the law alone. The motion is also now fully briefed. Nothing about these arguments or the District's 45-page memorandum suggests that discovery—let alone expedited discovery—is needed for the Court to assess these contentions. This factor, therefore, weighs against Plaintiff.

*Second*, in analyzing a motion for expedited discovery, the Court "examines the scope of the proposed discovery to assess whether it is reasonable." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014). "[C]ourts generally deny motions for expedited discovery when the movant's discovery requests are overly broad." *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, No. 98-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998). That is exactly the case here. Plaintiff's motion characterizes their discovery requests as "primarily seek[ing] operational documents that Defendants should have readily at hand." ECF No. 4 at 7. But at the same time, just one of their requests would require Defendants to produce every document or communication "regarding the use or deployment of the National Guard in operations" within D.C. since the Guard was first deployed. Pl.'s First Set of Reqs. for the Produc. of Docs. at 7, ECF No. 4-1. As explained below, the District's discovery demands bear no reasonable relationship to the narrow legal issues presented by its preliminary-injunction motion.

*Third*, courts carefully consider a litigant's purported reasons for seeking expedited discovery. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 164 (D.D.C. 2015) ("In considering whether good cause exists to grant a motion for expedited discovery, the Court also assesses the purpose of the motion."); *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005) (noting that courts should consider "the purpose for requesting the expedited discovery") (citation omitted). Here, the D.C. Attorney General himself says in his discovery motion that "it is clear without discovery that legal violations are

occurring in the District" and that "[t]his deployment of military force in the District is flatly unlawful." ECF No. 4 at 1, 2. His purported reasons for nonetheless demanding discovery are feeble. Plaintiff contends that "expedited discovery in support of the District's preliminary injunction motion is necessary to establish the extent to which National Guard troops are operating under federal command and control and the nature and scope of law enforcement activities in which they are engaged." ECF No. 4 at 2.

This is nonsensical. The nature and scope of "law enforcement activities" has no relevance to the Home Rule Act, EMAC, constitutional, and related claims, which rise and fall on the interpretation of the relevant statutes and other legal authorities. With respect to the PCA—which prohibits certain willful uses of the military to execute the laws—that claim independently fails for multiple threshold and purely legal reasons set forth in Defendants' filing yesterday. ECF No. 34 at 26-31. That aside, discovery on this subject would also be unnecessary because, as Defendants' filing also explained, the Guard closely coordinates its activities on a daily basis with the Metropolitan Police Department. So it is not true that "[o]nly the Defendants possess this information," ECF No. 4 at 2—the District itself, through its close coordination with Defendants, is in possession of much of the information that the D.C. Attorney General seeks.

As to "the extent to which National Guard troops are operating under federal command and control," the relevance of this question is unclear, and Plaintiff's claims all fail irrespective of how it is answered. In any event, Defendants' opposition filed yesterday includes the Employment Guidance for the District of Columbia National Guard and Out-of-District National Guard Service Members, which addresses these issues. ECF No. 34-1, Attachment 1. Even assuming there were some operational document that is relevant to the case in the future if the motion to dismiss is denied, that is not a justification for the seventeen document requests, eighteen interrogatories, and three depositions Plaintiff has requested and for which they would like an expedited response.

*Fourth*, if the burden of complying with expedited discovery "is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion." *Attkisson*, 113 F. Supp. 3d at 165 (citing *Humane Soc'y v. Amazon.com, Inc.*, No. 07-623, 2007 WL 1297170, at *3 (D.D.C. May 1, 2007)). "By contrast, when the defendants would have to expend a huge amount of resources to comply with expedited discovery, th[is] factor supports denying the motion for expedited discovery." *Id.* (internal quotation marks & brackets omitted) (citing *True the Vote, Inc. v. IRS*, No. 13-734, 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014)). Here, the latter is plainly the case.

Plaintiff does not propose that Defendants be required to "respond[] to only one or a few discovery requests," *id.*, but instead presents a "sprawling list" of 35 broad requests, consisting of 17 requests for production of documents and 18 interrogatories (which, with subparts, amounts to more than 40 interrogatories, well in excess of Rule 33's 25 interrogatory limit), as well as three depositions. *See Dunlap*, 319 F. Supp. 3d at 104. The proposed requests and interrogatories are extremely broad in scope. We address them individually below but, for now, it suffices to say that they collectively ask for virtually all materials bearing on the deployment and operations of the Guard in any way, including communications, policies, and records concerning the deployment, arming, training, and law-enforcement activities of National Guard units in the District of Columbia, such as operational orders, internal reports, and any materials related to federal or local coordination.

The extremely broad scope of Plaintiff's proposed discovery belies any "indication" that it is "narrowly tailored," as requests for expedited discovery are required to be. *Landwehr v. FDIC*, 282 F.R.D. 1, 4 (D.D.C. 2010) (citing as an example *Warner Bros. Records v. Does* 1-6, 527 F. Supp. 2d 1, 2-3 (D.D.C. 2007), in which a plaintiff was granted expedited discovery "to identify the individuals associated with certain specified unique Internet Protocol addresses"). "To the contrary, . . . the scope of the expedited discovery sought by [Plaintiff] will be quite broad and highly burdensome to the defendants." *Id.* And the massive burden that would be imposed by Plaintiff's proposed discovery

requests would only be compounded by the unreasonably short period Plaintiff proposes for their completion: 16 days (and, if their original schedule holds, only 8 days from today), followed in short succession by depositions. ECF No. 4. "Here, the burden on [Defendants] to comply with the proposed interrogatories and document production requests would be heavy. The proposed interrogatories are overly broad and would require significant time and resources to address." *Attkisson*, 113 F. Supp. 3d at 165. This factor, therefore, also weighs against expedited discovery.

*Fifth*, Plaintiff seeks expedited discovery far in advance of the typical discovery process and during the pendency of a motion to dismiss. "Because discovery typically occurs after the resolution of motions to dismiss, presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored." *Attkisson*, 113 F. Supp. 3d at 165 (internal citation omitted); *see also True the Vote*, 2014 WL 4347197, at *8 ("Typically, discovery begins upon the resolution of any motions to dismiss. Because the defendants' motions to dismiss remain pending, the plaintiff's discovery request is premature." (internal citation omitted)). Perhaps the "most important for the Court's reasonableness analysis is the pendency of the defendants' motion to dismiss." *Guttenberg*, 26 F. Supp. 3d at 99. This was because "[r]equiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could 'force[] [the defendants] to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action.'" *Attkisson*, 113 F. Supp. 3d at 165 (alterations in original) (quoting *Guttenberg*, 26 F. Supp. 3d at 99); *accord In re Quinteros*, No. BR 19-195, 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021), *aff'd*, No. 21-7087, 2022 WL 3970927 (D.C. Cir. Sep. 1, 2022). "At the very least, reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery." *Attkisson*, 113 F. Supp. 3d. at 165-66 (quoting *Guttenberg*, 26 F. Supp. 3d at 99).

Plaintiff's motion disregards these settled principles. By demanding expedited discovery before the parties have even conferred under Rule 26(f) and while threshold legal issues remain unresolved,

Plaintiff seeks to invert the ordinary sequence of litigation. This effort would compel Defendants to begin collecting, processing, and reviewing enormous volumes of electronically stored information from multiple federal agencies before the Court has even determined whether the Complaint states any viable claim. This is no small task: Plaintiffs have asked for Defendants to complete their document productions by September 25 (if their original schedule holds), but that will require the collection of electronically stored information from multiple agencies operating on separate electronic platforms, the processing of that electronically stored information, the subsequent review of documents, and their production as well as the provision of privilege logs. And before any documents are produced, the parties will need to negotiate a Protective Order. This is all but impossible on the timeline Plaintiff has proposed (or anything resembling it) and reflects precisely the "significant burden" that courts caution against when a motion to dismiss is pending, as it would require extensive agency coordination and expenditure of resources without assurance that any discovery will ultimately be warranted. Because Plaintiff offers no extraordinary circumstances to justify departing from the normal process, its request for accelerated discovery should be denied.

## IV.    Objections to Specific Discovery Requests.

Although the Court should deny the discovery motion in full, consistent with the Court's direction, Defendants now discuss the individual requests for production and interrogatories. To be clear, Defendants provide these objections on an expedited basis pursuant to the Court's order and to clarify the general bases on which they object to each request for production and interrogatory. But of course, discovery has not been authorized and, if any discovery is authorized, Defendants will provide their comprehensive objections at the time they respond to the discovery.[4]

---

[4] Notably, Plaintiff's proposal does not provide a mechanism or date by which Defendants shall serve their objections to the requests for production or interrogatories, but instead merely provides that Defendants "shall produce the documents requested" and "respond to" interrogatories on September 25. *See* ECF No. 4 at 10, 12 (Proposed Order).

With that caveat, we first start with the requests for production, addressing them in the order they are listed:

1. This request—seeking all documents or communications related to requests for support to state governors and other entities—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal questions, not on factual communications with state officials. The request is facially overbroad and disproportionate to the needs of the case, demanding a burdensome search for materials that have no bearing on the discrete legal issues currently before the Court. Rule 26(b)(2)(C) requires the Court to limit discovery that is unreasonably cumulative, duplicative, or where the burden outweighs any likely benefit, all of which apply here.

2. This request—seeking all documents related to attempts to obtain the District's consent— is unnecessary to decide the preliminary injunction motion, which turns primarily on legal questions, not on factual communications with District officials. Specifically, the District's consent is not required under the Home Rule Act, EMAC, or any other statute for the Federal Government to deploy the D.C. National Guard. Even assuming some marginal relevance, Rule 26(b)(2)(C) requires the Court to limit discovery that is unreasonably cumulative or obtainable from a more convenient source. Much of the materials responsive to this request would necessarily be within the District's own possession or readily accessible to it, rendering Defendants' production duplicative and unduly burdensome, and any remaining materials not available to the District would be irrelevant. The proposed discovery is also disproportionate to the needs of the case.

3. This request—seeking all documents or communications "regarding the use or deployment of the National Guard in operations within" the District since August 11—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal

questions. By seeking every single document regarding National Guard operations in the District, the request is plainly overbroad and disproportionate to the needs of the case, and falls outside the permissible scope of discovery under Federal Rule of Civil Procedure 26.

4. This request—which seeks "any internal reports, summaries, photos, or other such evidence" relating to National Guard "operations, actions, and practices" in the District— is unnecessary to decide the preliminary injunction motion, which turns primarily on legal questions. The request is plainly overbroad and disproportionate to the needs of the case, and falls outside the permissible scope of discovery under Federal Rule of Civil Procedure 26. Collecting *any* "internal" reports, summaries, photos, or "other such evidence" (an undefined term) would require extraordinarily burdensome, agency-wide searches through sensitive operational records—precisely the type of overreach Rule 26(b)(2)(C) directs courts to limit when the burden and expense far outweigh any conceivable benefit.

5. This request—seeking all documents and communications related to "risk assessments" (not just the risk assessments themselves)—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The request is plainly overbroad and disproportionate to the needs of the case and falls outside the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1). Even if marginal relevance exists, Rule 26(b)(2)(C) requires the Court to limit discovery that is unreasonably cumulative or where the burden outweighs any likely benefit. Responding would require a time-consuming search of sensitive operational materials.

6. This request—seeking all documents and communications related to orders to arm National Guard units (including decisions about specific weapons such as M17 pistols or M4 rifles)—is unnecessary to decide the preliminary injunction motion, which turns

primarily on legal issues. The decision about what weapons to carry are classic operational judgments that cannot be challenged under the APA. Even if marginally relevant, the request is disproportionate under Rule 26(b)(1) and (b)(2)(C), as it would require a burdensome search of sensitive records without any likely benefit to resolving the legal issues before the Court.

7. This request—which seeks all documents and orders related to rules for use of force, rules of engagement, or related policies governing National Guard activities—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. Rules of engagement are classic operational decisions not subject to APA review and have no bearing on any claim or defense. Even if tangentially relevant, the request is disproportionate under Rule 26(b)(1) and (b)(2)(C), as it would require an extensive search of military and law-enforcement records with no likely benefit to resolving the legal issues before the Court.

8. This request—for all documents relating to the deputization of National Guard troops— is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. Any such deputization decisions are operational and not reviewable under the APA. Even if a marginal connection exists, Rule 26(b)(1) and (b)(2)(C) require the Court to deny discovery that is disproportionate or where the burden outweighs any likely benefit, and a wide-ranging search for every deputization record would be unduly burdensome with no material bearing on the legal issues before the Court.

9. This request—seeking orders, policies, or communications "describing, instructing, directing, or RELATED TO THE LAW ENFORCEMENT ACTIVITIES and supportive functions for civilian law enforcement that could be, would be, will be, or have been, taken" by the National Guard—is unnecessary to decide the preliminary injunction

motion, which turns primarily on legal issues. The request is also confusing and vague to the extent it seeks orders, policies, or communications that "could be" or "would be" taken. Collecting every responsive document would require an immense, multi-agency search of sensitive operational records, precisely the type of disproportionate and unduly burdensome discovery Rule 26(b)(1) and 26(b)(2)(C) direct courts to deny.

10. This request—for all documents, communications, and records related to any training or policies provided to National Guard units (not just the policies themselves)—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. It is particularly irrelevant because the request seeks materials relating to the Posse Comitatus Act, but as set forth in Defendants' briefing, that statute is completely inapplicable here. Even if marginally relevant, the sweeping demand for every record relating to training or policy provided to the Guard is disproportionate and unduly burdensome under Rule 26(b)(1) and (b)(2)(C).

11. This request—for all documents related to law enforcement activities and uses of force, or "other similar activities"—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. It is vague and of undefined scope to the extent it seeks documents related to "other similar activities." It is particularly irrelevant because the request seeks documents relating to the Posse Comitatus Act, but as set forth in Defendants' briefing, that statute is completely inapplicable here. Even if marginally relevant, the sweeping demand for every record relating to law enforcement activities is disproportionate and unduly burdensome under Rule 26(b)(1) and (b)(2)(C).

12. This request—which seeks *all* documents, reports, and communications concerning any orders describing the authority, duties, or responsibilities of National Guard troops performing patrols in the District without civilian law-enforcement agencies—is

unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The materials sought in this request are classic military operational decisions that are not subject to APA review, or tangential materials that are merely "related to" those decisions. Even if relevance exists, Rule 26(b)(1) and (b)(2)(C) require courts to deny discovery where the burden of locating and reviewing sensitive operational records across multiple commands would far outweigh any conceivable benefit.

13. This request—which seeks all communications and documents relating to summaries, descriptions, or information related to the duties, responsibilities, or actions of National Guard personnel while accompanying federal or local law-enforcement agencies—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The scope of the request is disproportionate to the needs of the case and would require an unduly burdensome, multi-agency search of sensitive records—precisely the type of disproportionate discovery Rule 26(b)(1) and 26(b)(2)(C) instruct courts to deny.

14. This request—for all communications to federal and local law enforcement agencies related to limitations regarding the National Guard's activities—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. Factual disputes about the specific operational parameters under which the Guard may provide support would reflect internal operational judgments not subject to APA review. Since the District is a local law enforcement agency, it presumably is already in possession of the communications it has received from Defendants. Further, Rule 26(b)(1) and (b)(2)(C) require courts to deny discovery that is disproportionate to the needs of the case. An expansive search for every such communication would impose an undue burden with no corresponding benefit to resolving the legal questions before the Court.

15. This request—for all documents, communications, and policies and procedures related to complaints of alleged impermissible actions or the permissibility of actions—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The request is also remarkably vague. Factual disputes about individual complaints or alleged misconduct are irrelevant to the programmatic claims raised in this case. Even if marginally relevant, Rule 26(b)(1) and (b)(2)(C) require courts to deny discovery when the burden of a wide-ranging search outweighs any conceivable benefit.

16. This request—regarding use of force—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. Internal operational rules governing when use of force by the Guard is justified constitute classic military operational judgments not reviewable under the APA. Even if some marginal relevance existed, Rule 26(b)(1) and (b)(2)(C) require the Court to deny discovery where the burden and sensitivity of locating and reviewing such materials would vastly outweigh any conceivable benefit.

17. This request—which seeks communications and documents referenced or relied upon in Defendants' interrogatory responses—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues.

As to the Interrogatories:

1. This interrogatory—seeking the identification of every state or governor asked to deploy National Guard troops to the District of Columbia and a detailed description of each response, including troop numbers and specialized support roles or training—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues, not on factual communications with state officials. Gathering the requested information would require extensive coordination and would impose a burden that is

disproportionate to any conceivable benefit and is precisely the kind of discovery Rule 26(b)(1) and 26(b)(2)(C) instruct courts to deny.

2. This interrogatory—which seeks identification of the chain of command for every National Guard unit ordered to the District of Columbia since August 11, 2025, including any subsequent changes—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The information sought is also disproportionate to the needs of the case.

3. This interrogatory—seeking information regarding efforts to obtain the consent of the District—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. Specifically, the District's consent is not required as a legal matter, making the information sought in this interrogatory irrelevant. In any event, much of the responsive information would also be in the District's own possession. The information sought is also disproportionate to the needs of the case.

4. This interrogatory—seeking information regarding limitations placed on the National Guard—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues.  The information sought is also disproportionate to the needs of the case.

5. This interrogatory—seeking information regarding the instructions provided to federal agencies or task forces regarding the authorized use of the National Guard—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory is also vague and confusing. The information sought is also disproportionate to the needs of the case.

6. This interrogatory—seeking information regarding actions National Guard personnel are authorized to take—is unnecessary to decide the preliminary injunction motion, which

turns primarily on legal issues. The information sought is also disproportionate to the needs of the case.

7. This interrogatory—seeking a description of "all activities" the National Guard has engaged in—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. It is also breathtaking in scope, requesting a description of each and every individual activity conducted by the National Guard since August 11. Moreover, due to coordination efforts, much of this information may already be in the District's possession. The information sought is therefore disproportionate to the needs of the case.

8. This interrogatory—seeking a description of each official order given to the National Guard relating to their deployment—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The information sought is also disproportionate to the needs of the case.

9. This interrogatory—seeking the identification of requests for assistance by law enforcement agencies related to law enforcement activities to which National Guard units have responded—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. Some of the information may already be in the District's possession to the extent the MPD has requested assistance or is otherwise coordinating with Defendants. The information sought is also disproportionate to the needs of the case to the extent it seeks every request for assistance.

10. This interrogatory—seeking information regarding the deputization of National Guard troops—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The information sought is also disproportionate to the needs of the case to the extent Defendants have to identify every law enforcement agency, date, unit, troop count, and authority conferred. Finally, starting with this interrogatory, Plaintiff has

22

exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

11. This interrogatory—seeking information regarding training provided—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The information sought is also disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

12. This interrogatory—directing Defendants to identify "all actions" taken by the National Guard where they "have performed any function that made use of any authority pursuant to a deputization"—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory is also vague and grossly overbroad in that it literally seeks a description of everything that every National Guard member has done pursuant to their deputizations since August 11. This is disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

13. This interrogatory—which seeks an array of information regarding any law enforcement activity conducted by National Guard members—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory is grossly overbroad in that seeks the identification of all instances of law enforcement activity since August 11; law enforcement activity is elsewhere defined by Plaintiff to include "pursuit, arrests, apprehension, detention, search, seizure, security patrols, presence patrols, traffic control, crowd control, riot control, evidence collection, interrogation, informant operations, and any other activity where civilians are subjected to authority that is regulatory, proscriptive, or compulsory." Definitions ¶ 14. This is disproportionate to the

needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

14. This interrogatory—which seeks information on how Defendants are monitoring the conduct of National Guard personnel—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory also seeks irrelevant information to the extent it seeks information on compliance with the Posse Comitatus Act, which as Defendants explained in their briefing is inapplicable here. The interrogatory is also disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

15. This interrogatory—which seeks a description of activities Defendants understand to be prohibited under the Posse Comitatus Act—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory also seeks irrelevant information to the extent it seeks information on compliance with the Posse Comitatus Act, which as Defendants explained in their briefing is inapplicable here. The interrogatory is also disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

16. This interrogatory—which seeks a description of policies and procedures related to complaints, reports, or questions related to National Guard personnel activities as they relate to the Posse Comitatus Act and other legal limitations—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory also seeks irrelevant information to the extent it seeks information regarding Posse Comitatus Act, which as Defendants explained in their briefing is inapplicable here. The interrogatory

is also disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

17.  This interrogatory—which seeks the identity of communications between National Guard and civilian law enforcement personnel—is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues.  The interrogatory is also grossly overbroad to the extent it seeks the identity of "all" communications, as the National Guard is in regular communication with (and regularly coordinates with) law enforcement personnel. The interrogatory also requests information in the District's own possession as many of the communications are presumably going to be with District entities, such as the Metropolitan Police Department. The interrogatory is also disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

18. This interrogatory—which seeks a description of trainings given to the National Guard— is unnecessary to decide the preliminary injunction motion, which turns primarily on legal issues. The interrogatory is also disproportionate to the needs of the case. Finally, Plaintiff has exceeded the number of interrogatories, including subparts, permitted by Rule 33. *See* Fed. R. Civ. P. 33(a)(1).

Defendants also object to Plaintiffs' request for three depositions. No discovery is appropriate at this time or in this case but, particularly given the sweeping written discovery they have sought, Plaintiffs do not explain why they *also* require depositions, why three are necessary, or identify what the topics of the depositions would be.

Finally, as discussed above, Plaintiff's discovery demands are exponentially broader than those authorized in *Newsom*. Unlike in *Newsom*, California never sought discovery from the White House; it obtained discovery only from the DoD, in addition to a single deposition of a DHS official who had

submitted a declaration on behalf of the federal government. Here, by contrast, the District seeks discovery from multiple agency defendants and a White House component—specifically from the President himself—contravening "[t]he high respect that is owed to the office of the Chief Executive," which "is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton*, 520 U.S. at 707. That office's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon*, 457 U.S. at 749-53. And the Supreme Court has made clear that courts must be "mindful of the burdens imposed on the Executive Branch" and avoid "unwarranted impairment of another branch in the performance of its constitutional duties," particularly where, as here, the assertion of executive privilege is not a necessary precondition to raising separation-of-powers objections. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381-85, 390, 391 (2004). This Court should therefore decline to permit any discovery directed to the White House.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's motion for expedited discovery.

Dated: September 17, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOHN BAILEY
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG
(D.C. BAR NO. 467513)
Special Counsel

Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Phone: 202-514-3374
Email: brad.rosenberg@usdoj.gov

Andrew M. Bernie
Civil Division, U.S. Department of Justice

*Attorneys for Defendants*