## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA

                    *Plaintiff,*

v.

DONALD J. TRUMP, et al,

                    *Defendants.*

Case No. 25-cv-3005 (JMC)


## BRIEF OF OVERSIGHT PROJECT AND PRESIDENT MIKE HOWELL
## AS AMICI CURIAE

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

   I.   D.C. PURPORTS TO SUE AS SOVEREIGN AND IS THE REAL PARTY IN
       INTEREST ....................................................................................................................... 3

  II.   D.C. CANNOT SUE THE UNITED STATES HERE. ...................................................... 5

     A.  D.C. Exists Soley as a Municipal Corporation Created by the United States; it Has No
        Sovereign Power to Vindicate. ..................................................................................... 5

     B.  A Subordinate Municipal Corporation of the United States Cannot Sue the United
        States to Viciate a Soverign Interest. ........................................................................... 7

     C.  There is no Harm to D.C. As Sovereign for Standing Purposes. ................................ 11

     D.  The Original Public Meaning of the District Clause Supports This Conclusion. ........ 12

 III.   D.C. LACKS AUTHORITY TO BRING THIS ACTION. ............................................... 14

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Clinton*, 90 F.Supp.2d 35 (D.D.C. 2000) (3 Judge Court) ........................................ 7, 10

*Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) ..................................................... 9

*Alexander v. Sandoval*, 532 U.S. 275, (2001)................................................................ 15

*Banner v. United States*, 428 F.3d 303 (D.C. Cir. 2005)..................................................... 6, 10, 12

*Barnes v. District of Columbia*, 91 U.S. (1 Otto) 540 (1875 ................................................. 6, 8

*Barnes v. Kline*, 759 F.2d 21 (D.C. Cir. 1984) ............................................................... 10

*City of New York v. State*, 86 N.Y.2d 286 (N.Y. 1995) ....................................................... 15

*Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311 (2d Cir. 1945).......................................... 7

*Dir., Off. Of Workers' Comp. Prog. Dept of Labor v. Newport News Shipbuilding and Dry Dock
    Co.*, 514 U.S. 122 (1995) ................................................................................ 8

*District of Columbia v. Exxon Mobil Oil Corp.*, 172 A.3d 412 (D.C. 2017)................................... 6

*District of Columbia v. John. R. Thompson Co.*, 346 U.S. 100 (1953) ........................................ 8

*Emp. Welfare Comm v. Daws*, 559 F.2d 1375 (5th Cir. 1979) ................................................ 8

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ................................................. 10

*Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774 (2d Cir. 1921)........................................... 8

*Groupo Mexciano v. All Bond Fund, Inc.*, 527 U.S. 308 (1999) .............................................. 16

*Gunther v. Wright*, 75 F. 742 (6th Cir. 1896) ............................................................... 12

*In Re Sealed Case*, 146 F.3d 1031 (D.C. Cir. 1998)......................................................... 9

*Juliano v. Fed. Asset Disposition Ass'n*, 736 F.Supp 348 (D.D.C. 1990) ..................................... 8

*Kendall ex rel. Stokes v. United States*, 37 U.S. (12 Pet.) 524 (1838)......................................... 5

*Landmark Co., Inc. v. FDIC*, 256 F.3d 1365 (Fed. Cir. 2001) ............................................... 8

*Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1 (1889)............................................. 6, 12

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ....................................... 5

*Neild v. District of Columbia*, 110 F.2d 246 (D.C. Cir. 1940) ................................. 6, 12
*SEC v. Fed. Labor Relations Authority*, 568 F.3d 990 (D.C. Cir. 2009)................................ 7, 10

*Snow v. United States*, 85 U.S. (18 Wall.) 317 (1873) .................................................. 6

*Stoutenburgh v. Hennick*, 129 U.S. 141 (1889) ...................................................... 15

*Trans Union LLC v. Rameriz*, 594 U.S. 413 (2021) ................................................... 11

*Trump v. Mazars*, 591 U.S. 848 (2018) ............................................................... 13

*U.S. Postal Service v. Postal Regulatory Comm'n*, 963 F.3d 137 (D.C. Cir. 2020)..................... 7

*United States v. District of Columbia*, 596 F.Supp. 725 (D. Md. 1984)............................... 10

*United States v. ICC*, 337 U.S. 426 (1949)............................................................ 7, 10

*United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005).............................................. 3

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ...................................... 9

*United States v. Shell Oil Co.*, 605 F.Supp. 1064 (D. Colo. 1985)................................... 8, 11

*United States v. Texas*, 599 U.S. 670 (2023) ...................................................... 11

*Williams v. Mayor and City Counsel of Baltimore*, 289 U.S. 36 (1933) ............................ 9

**Statutes**

16 Stat. 419 (1871)................................................................................ 15

20 Stat 102 (1878)................................................................................ 14

D.C. Code § 1-102 ............................................................................. 1, 5, 14

D.C. Code § 1-301.81 ............................................................................ 14

D.C. Code § 2-306.01 ............................................................................ 5

U.S. Const. Art. I. § 8 Cl. 17.................................................................... 5

**Other Authorities**

*Constitutionality of the Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. OLC 131 (1989)............................................................. 7

H.R. 4922 (2025) .............................................................................. 3

H.R. 5125 (2025) ............................................................................................................ 3

H.R. 5140 (2025) ............................................................................................................ 3

H.R. 5143 (2025) ............................................................................................................ 3

James Madison, *Notes of Debates in the Federal Convention* 378 (1987 ed.) ............................ 12

John F. Dillon, *Treatise on the Law of Municipal Corporations* 101–02 (1878) ........................ 15

Scalia & Gardiner, Reading Law 197 (2012)……………………………………………………14

## INTRODUCTION

This case should not be here. There is no standing and thus no power in this Court to adjudicate it. This Court is required both to raise the question of its Article III jurisdiction *sua sponte* and to assure itself that it has jurisdiction to proceed. This Court lacks jurisdiction because the Government of the District of Columbia ("D.C.") lacks power to sue the United States to vindicate sovereign interests it does not have because it is a sub-division thereof and thus there is no Article III jurisdiction over such a dispute. This case must be dismissed.

The Government of D.C. is *not* a "sovereign" as D.C. would have it. It is but "a body corporate for municipal purposes" (D.C. Code § 1-102)—largely similar to any other city in the United States. What *is* different about D.C. is that it exists *entirely* as a creation of the Federal Government. D.C. is not a State. Nor is it a Department or agency (even an "independent" one). It has no independent existence beyond what the Federal Government chooses to grant it at any given instance; it is entirely dependent on the Federal Government.

All Sovereign power rests in the United States. As a mere corporation created by the Federal Government, D.C. cannot sue the very body which gives it its existence; it is part of it. And as D.C. has no sovereign power it cannot suffer injury withing the meaning of Article III as a sovereign.

This conclusion makes sense in the broader context of the District Clause of the Constitution. The whole point of the District of Columbia[1] was to ensure that the National Government would be free from the influence of local passions in particular States. But there is

---

[1] We use the term District of Columbia to refer to the geographic region as opposed to the local government thereof.

no *structural* difference whatsoever between local influence from a State and a government of local residents attempting to impart its local will on the National Government.

This case is entirely about politics.  The D.C. electorate and the D.C. government are currently comprised of individuals with steep political divisions from President Donald J. Trump and a Republican-controlled Congress.  To be sure, under the principles of federalism, a normal city may choose policies that undermine the policies of the Federal Government under which it sits.  But D.C. is *not* a normal City.  D.C. must be governed in a way that is responsive to the *National* will.  The Constitution mandates it.  But how can D.C. possibly be run by the National will when a local government that has a different view has the power to rush into Federal Court to sue the Federal Government to adjudicate political differences?  It cannot.  There will be a cycle of topseyturvedom by lawsuit in which every dispute between D.C. and the National Government is marked not by political resolution, but a race to the Courthouse.  We have seen that already— an unprecedented explosion of litigation simply because D.C. strongly disagrees with President Donald J. Trump's indisputably National priorities for the District of Columbia.[2]

This Court need not even reach the standing question.  Under a fair reading D.C.'s basic corporate power to "sue" it does not authorize the D.C. Attorney General to sue the Federal Government.  This Court can and should end this case there—informed by the longstanding injunction of the Supreme Court to construe statutes to avoid fraught constitutional questions.

By the same logic, D.C. lacks an equitable cause of action against the Federal Government to assert a Constitutional limitation.  Such an action is not only unknown to the common law, it was basically unheard of until the last few years.

---

[2]  Given that the District of Columbia is *overwhelmingly* Democratic this is a one-way ratchet; the conflict almost always occurs only when a Republican Administration is in power.  That of course exacerbates the problem as it is not merely a misalignment of National to local interests, but a perpetual repudiation of the National will only in one political direction.

To be clear, that does not mean there is *no* remedy should the D.C. feel itself aggrieved. It—like any other citizens or corporation—has full power to petition Congress and the President for redress of grievances.  And it is uniquely positioned through its existing municipal infrastructure to resort to the "hurly-burly" of politics and media.  That is part of why it has a Delegate in the United States House of Representatives—a resource any other private lobbyist or municipal corporation can only dream of.  Indeed, the Mayor, the Chairman of the D.C. City Council, and the D.C. Attorney General are testifying before the U.S. House Committee on Oversight and Government Reform on September 18, 2025, and will have every opportunity to protest the actions complained of here.  (Perhaps they turn to this Court as a counter-majoritarian institution because Congress has made quite clear they agree with the President).[3]  Moreover, at least *some* claims advanced here by D.C. can be advanced by private parties suffering from specific and concrete injury.  *See, e.g.*, *United States v. Johnson*, 410 F.3d 137, 149 (4th Cir. 2005) (adjudicating posse comitatus claim in suppression motion and holding "widespread and repeated violations" of the Posse Comitatus Act could lead to suppression).

The merits of Home Rule and the merits of this case are obviously hotly contested topics. They will be contested and resolved in *some* forum.  But under Article III and Statute they cannot be contested here.

## ARGUMENT

## I.     D.C. PURPORTS TO SUE AS SOVEREIGN AND IS THE REAL PARTY IN INTEREST.

D.C. is acting as if it were a State.  There is no doubt what D.C. views this case to be about.  *It* is the real party in interest.  *See, e.g.*, Motion for a Preliminary Injunction at 2 (ECF No. 3) ("Mot.") ("And preliminary injunctive relief is warranted to halt the irreparable harms these

---

[3] *See, e.g.*, H.R. 4922 (2025), H.R. 5140 (2025), H.R. 5143 (2025), H.R. 5125 (2025).

actions are inflicting *on the District*." (emphasis added)); *id.* at 17 ("Defendants have *supplanted the Mayor's authority* to police the District and directed both DCNG and out-of-state National Guard troops to engage in law enforcement without statutory authorization.") (emphasis added)); *id.* at 41 ("The *District* is suffering severe and irreparable injury from the unconsented-to deployment of National Guard units that are now engaged in unlawful law enforcement activities throughout the District." (emphasis added).

D.C. has brought this Action to vindicate its "sovereign" interest.  In every way possible it sets itself up as akin to a sovereign State resisting Federal encroachment.  *See, e.g.*, Mot. at 2 ("Every day that this lawless incursion continues, the District suffers harm to its sovereign authority to conduct local law enforcement as it chooses."); *id.* at 23 ("Nothing in the Home Rule Act gives other states the authority to engage in law enforcement in the District.  And it is a basic precept of our federal system that states may not exert their sovereign authority beyond their borders without the receiving jurisdiction's consent."); *id.* at 24 ("And, indeed, no other President has attempted to deploy non-federalized National Guard troops to a jurisdiction absent "coordination with or [a] request from the supported State."  Buchanan Decl. ¶ 21."); *id.* at 27 ("In our federal system, it is a bedrock principle that one state may not "invade" another without its consent."); *id.* at 41 ("This intrusion has inflicted a substantial sovereign injury, by depriving the District of one of the core rights of self-government afforded in the Home Rule Act: the authority to control law enforcement operations in the District."); *id.* ("This loss of sovereign authority and control is itself irreparable.").

Moreover, D.C. has brought this suit because *it* disagrees with prudential wisdom of the President's actions.  "The District's elected leaders did not invite these troops and do not believe their presence is in the best interests of the District."  Mot. at 1.  The policy disagreement could

not be more starkly presented in the papers.  For the reasons explained below, D.C.'s actions are unlawful.

II.    **D.C. CANNOT SUE THE UNITED STATES HERE.**

    A.    **D.C. Exists Soley as a Municipal Corporation Created by the United States; it Has No Sovereign Power to Vindicate.**

D.C. is not a sovereign and thus cannot proceed to litigate a policy disagreement as one sovereign against another sovereign.  The text of the Constitution is explicit as to where all sovereignty within the District of Columbia resides:  "*The Congress* shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States."   U.S. Const. Art. I. § 8 Cl. 17 (emphasis added).  "Congress has the entire control over the district for every purpose of government" (*Kendall ex rel. Stokes v. United States*, 37 U.S. (12 Pet.) 524, 619 (1838)) and "thus, necessarily, the Executive and Judicial powers as well as the Legislative." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76 (1982).

Nothing in the Home Rule Act alters this basic fact.  It provides as to the specific form of D.C. that:

> The District is created a government by the name of the "District of Columbia," by which name it is constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code.

D.C. Code § 1-102.  Thus, D.C. has the power of a "municipal corporation" and Congress has expressly reserved its plenary power.  *See* D.C. Code § 2-306.01.

In that D.C. is a "municipal corporation" it is not a "Department" of in the sense of the Treasury (or some other equivalent body).  *Metropolitan R. Co. v. District of Columbia*, 132 U.S.

1, 7–8 (1889).  In that sense, it is very much subordinate to the National Government.  *See Barnes v. District of Columbia*, 91 U.S. (1 Otto) 540, 544 (1875) ("A municipal corporation, in the exercise of all of its duties, including those most strictly local or internal, is but a department of the State."). That is why, for example, D.C. as a "purely municipal corporation" is subject to statutes of limitations like any other person.  *Metropolitan R. Co.*, 132 U.S. at 11.  The Supreme Court has been clear that the general proposition that "[a]ll municipal government are but agencies of the superior power of the state or government by which they are constituted, and are invested with only such subordinate powers of local legislation and control as the superior legislature sees fit to confer upon them" applies directly to any sort of municipal corporation create under Home Rule. *Id.* at 8.

The "sovereign power . . . is not lodged in the corporation of the District of Columbia, but in the government of the United States.  Its supreme legislative body is congress."  *Id.* at 9. "Congress is not a foreign sovereign government in relation to the District, as the New Jersey legislature is to New York; Congress *is* the District's government, *see* U.S. Const. art. I, § 8, cl. 17".  *Banner v. United States*, 428 F.3d 303, 309 (D.C. Cir. 2005); *see also Snow v. United States*, 85 U.S. (18 Wall.) 317, 320 (1873) ("During the term of their pupilage as Territories, they are mere dependencies of the United States.  Their people do not constitute a sovereign power. All political authority exercised therein is derived from the General Government.").[4]

It is for this (among other) reasons that courts have repeatedly rejected treating the District of Columbia as a State (unless Congress has definitionally modified that term in statute).  *See, e.g.,*

---

[4]  To be sure, the D.C. Court of Appeals has used the term "sovereign" loosely and even gone so far as to suggest that D.C. "is a sovereign for many purposes."  *District of Columbia v. Exxon Mobil Oil Corp.*, 172 A.3d 412, 422 (D.C. 2017).  But that is besides the point because as the Court and the D.C. Circuit control here as to *actual* sovereignty, which is a question of federal law.  It is best seen as simply a shorthand for the municipal power possessed by D.C.

*Neild v. District of Columbia*, 110 F.2d 246, 249 n.3 (D.C. Cir. 1940) (collecting authorities holding D.C. is not a state); *Adams v. Clinton*, 90 F.Supp.2d 35, 46–47 (D.D.C. 2000) (3 Judge Court), *aff'd*, 531 U.S. 941 (2000) (Mem.).

**B.      A Subordinate Municipal Corporation of the United States Cannot Sue the United States to Vindicate a Sovereign Interest.**

As a mere municipal corporation, D.C. cannot maintain an action of the sort here against the United States.

**1.**      Start with the basic (and unremarkable) "long-recognized general principle that no person may sue himself." *United States v. ICC*, 337 U.S. 426, 427 (1949); *accord Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311, 312 (2d Cir. 1945) ("In private litigation the plaintiff and defendant cannot be the same."). That principle is one of Article III standing. *See, e.g.*, *ICC*, 337 U.S. at 429 ("Properly understood the general principle is sound, for courts only adjudicate justiciable controversies. They do not engage in the academic pastime of rendering judgments in favor of persons against themselves."); *Def. Supplies Corp.*, 148 F.2d at 313 ("no real case or controversy").

That principle applies fully to the United States (qua the Executive Branch which represents the United States). As then- Circuit Judge Kavanaugh explained, "because agencies involved in intra-Executive Branch disputes are not adverse to one another (rather, they are both subordinate parts of a single organization headed by one CEO), such disputes do not appear to constitute a case or controversy for purposes of Article III." *SEC v. Fed. Labor Relations Authority*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring); *accord U.S. Postal Service v. Postal Regulatory Comm'n*, 963 F.3d 137, 143–44 (D.C. Cir. 2020) (Rao, J., concurring); *Constitutionality of the Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. OLC 131, 138 (1989) ("The Office of Legal Counsel has long

held the view that lawsuits between two federal agencies are not generally justiciable."). Courts have long dismissed such lawsuits for lack of Article III standing regardless of whether they involved the Government itself, agencies, or components of agencies. *See, e.g.*, *Landmark Co., Inc. v. FDIC*, 256 F.3d 1365, 1380 (Fed. Cir. 2001) (no standing for suit by FDIC against Resolution Trust Corporation (a federal instrumentality)); *Emp. Welfare Comm v. Daws*, 559 F.2d 1375, 1377–78 (5th Cir. 1979) (no standing over suit by a component of the "United States Postal Service" against United States or against the Postal Service); *Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774 (2d Cir. 1921) (no standing when railroads both controlled by the Director General of Railroads); *Juliano v. Fed. Asset Disposition Ass'n*, 736 F.Supp 348, 352–53 (D.D.C. 1990) (no standing to maintain qui tam action against Federal Asset Disposition Association chartered by the Federal Saving and Loan insurance Corporation as an "instrumentality of the United States"); *United States ex rel. for the Use of Tenn. Val. Authority v. Easement and Right of Way over Certain Land in Bedford County, Tenn.*, 204 F.Supp. 837, 839 (E.D. Tenn. 1962) (no standing to adjudicate condemnation action by Tennessee Valley Association over land in which Farmers Home Administration held security interest); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1083 (D. Colo. 1985) ( no standing over "new" Army suing the "old" Army for past actions). This rule applies in spades when the matters in dispute are question of policy as opposed to action as a market participant. *See Dir., Off. Of Workers' Comp. Prog. Dept of Labor v. Newport News Shipbuilding and Dry Dock Co.*, 514 U.S. 122, 128–29 (1995).

2. This long-standing logic applies to D.C. bringing suits against the Federal Government. D.C.'s existence as municipality is contingent upon actions taken by the Federal Government; "it is great or small according as the legislature shall extend or contract the sphere of its action." *Barnes*, 91 U.S. at 545. Without the Federal Government, D.C. does not exist. *See*

*District of Columbia v. John. R. Thompson Co.*, 346 U.S. 100, 108 (1953) (theory of home rule is merely delegation of power residing solely in Congress).  Thus, an action by D.C. against the United States is plainly an action by the United States against itself.[5]  This is particularly the case as concerns a lawsuit seeking to vindicate sovereign power.  Only the United States is sovereign; and there can be only one United States.  *See, e.g.*, *United States v. Providence Journal Co.*, 485 U.S. 693, 701 (1988) (finding "somewhat startling" the submission that here is more than one "United States" that may appear before this Court.").  Thus, just as only the Independent Counsel could represent the United States and therefore there could be no controversy between the Attorney General purporting to represent the interests of the United States or even the Treasury Department acting as an agency thereof there can be no controversy in a suit in which D.C. purports to act to vindicate sovereign power only the United States has.  *See In Re Sealed Case*, 146 F.3d 1031, 1031–33 (D.C. Cir. 1998) (Silberman, J., concurring in denial of rehearing en banc).

This same basic logic applies under federal law as concerns the similar context of claims by municipal corporations against the State that created them.  As Justice Cardozo explained "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."  *Williams v. Mayor and City Counsel of Baltimore*, 289 U.S. 36, 40 (1933); *accord Aguayo v. Richardson*, 473 F.2d 1090, 1101 (2d Cir. 1973) (per Friendly, J.) ("The City lacks standing to assert constitutional claims against the State").  The only exception to the "political subdivision standing doctrine" recognized in some Circuits is when Congress makes use of the Supremacy Clause to "specifically provid[e] right sot the municipalities" by statute.  *City of Hugo*

---

[5]  That D.C. cannot sue the United States does not mean that no controversy is justiciable, the United States may well have resort to traditional common law *controls* over an errant corporate entity such as an action for mandamus, *certiorari*, or *quo warrento*.  That is not a sovereign suing itself, but a sovereign using traditional causes of action to exercise control.

*v. Nichols*, 656 F.3d 1251, 1275 (10th Cir. 2011); *id.* at 1256  (collecting authorities).

**3.**     To be sure, there are exceptions to the foregoing rules—for example in *ICC*, the

Court tolerated the United States being on both sides of the v.  *See ICC*, 337 U.S. at 430.  (More

on this later).  But none of them apply here.

**a.**     To start, D.C. has on occasion sought to sue the Federal Government.  But in most

of those instances, it was joined by private plaintiffs who had standing and the issue of D.C.'s

standing was (somewhat pointedly) avoided.  *See Banner*, 428 F.3d at 307 n.5; *Adams*, 90

F.Supp.2d at 45 n. 12.  And in a somewhat odd case where the United States initiated the litigation

in the different context of property dispute, the Courts did not consider the question of standing.

*See United States v. District of Columbia*, 596 F.Supp. 725 (D. Md. 1984), *aff'd*, 788 F.2d 239

(4th Cir. 1986).

**b.**     As to the *ICC* line of cases, those cases appear to rest on two rationales.  First, *ICC*

has generally been understood to turn on the fact that one looks through the named parties to

determine the real parties in interest.  *See, e.g.*, *Barnes v. Kline*, 759 F.2d 21, 64 (D.C. Cir. 1984)

(Bork, J., dissenting).  Here, there is no question that D.C. is the real party in interest as it trumpets

that it sues as though it were a sovereign, so this rationale has no applicability.

Second, *ICC* and other cases routinely rest on the notion that independent agencies may

sue each other by dint of fact that independent agencies under *Humphrey's Executor v. United*

*States*, 295 U.S. 602 (1935) exist as though they are a floating Fourth branch of Government that

sits in parallel to the Executive and is not subject to full Presidential control.  *See, e,g.*, *SEC*, 568

F.3d at 997 (Kavanaugh, J., concurring); *Barnes*, 759 F.2d at 64 (Bork, J., dissenting).  To be sure,

there is some intuitive appeal to analogy here at first blush—Home Rule in effect establishes D.C.

as a quasi-independent agency.  But that analogy breaks down when the nature of a "municipal

corporation" is considered. It does not have a parallel dignity or enclave within the Executive

Branch which when resolved in litigation manifests itself as a routine judicial controversy. *Cf.*

*Shell*, 605 F.Supp at 1082 (asking whether inter-agency litigation is of the type "traditionally

justiciable"). Rather, it is entirely *subordinate*. Unlike with an independent agency there is no

need for a Court to referee a dispute between "equals" because the United States's absolute control

and supremacy *always* prevails in a dispute with a mere municipal corporation. The allocations of

power there are entirely matters of politics.

      **C.**    **There is no Harm to D.C. As Sovereign for Standing Purposes.**

      Even if D.C. can somehow get past the fact that this case would be one of the United States

impermissibly suing itself, D.C. has another problem. It lacks harm for standing purposes. Article

III requires a showing of a sort of harm that was "'traditionally' recognized as providing a basis

for a lawsuit in American Courts." *Trans Union LLC v. Rameriz*, 594 U.S. 413, 424 (2021)

(citation omitted). But here the injury asserted is sovereign injury over a policy disagreement.

That injury cannot possibly be cognizable in that it does not exist; D.C. cannot be injured by insult

to a sovereignty *it does not have*. That is especially so given the historical record that demonstrates

that municipal corporations generally had little to no power to challenge the actions of their

creators precisely for this reason. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 677 (2023)

(rejecting stated theory of standing because" [t]he States have not cited any precedent, history, or

tradition of courts ordering the Executive Branch to change its arrest or prosecution policies so

that the Executive Branch makes more arrests or initiates more prosecutions."). In that sense the

"political subdivision standing doctrine" is not only a rule of preclusion due to adverseness, but

also one due to lack of cognizable injury. And finally, there is no longstanding tradition of suits

by D.C. seeking to enforce sovereign power quo the United States. While someone directly and

concretely aggrieved by the injuries D.C. complains of may well have sufficient concrete injury to

challenge those actions (such as, for example, an arrest) D.C. itself does not because it was not injured.

### D.    The Original Public Meaning of the District Clause Supports This Conclusion.

The original public meaning of the District Clause strongly supports a rule that the municipal corporation of D.C. cannot sue the United States.  As the D.C. Circuit explained in *Banner*:

> The evident purpose of granting Congress authority over the District was to provide the federal government a place where it would not be harassed or neglected by local interests. *See* The Federalist No. 43 (James Madison); 2 Joseph Story, Commentaries on the Constitution of the United States § 1219 (5th ed. 1891) (suggesting that Pennsylvania's refusal to defend the Continental Congress from an angry crowd of disbanded but unpaid Revolutionary War soldiers ultimately led to inclusion of the District Clause).

*Banner*, 428 F.3d at 309.  Of additional note, the first mention of what became the District Clause by Colonel Mason was grounded not only in this concern, but in a desire to avoid "disputes concerning jurisdiction."  James Madison, *Notes of Debates in the Federal Convention* 378 (1987 ed.).  As then-Judge Taft explained this is why the Government of the District of Columbia *necessarily* is National:

> It was meet that so powerful a sovereignty should have a local habitation the character of which it might absolutely control, and the government of which it should not share with the states in whose territory it exercised but a limited sovereignty, supreme, it is true, in cases where it could be exercised at all, but much restricted in the field of its operation. The object of the grant of exclusive legislation over the district was, therefore, national in the highest sense, and the city organized under the grant became the city, not of a state, not of a district, but of a nation.

*Gunther v. Wright*, 75 F. 742, 757 (6th Cir. 1896).  That is why it is said that even when Congress "legislates for the District" it "acts as a legislature of national character."  *Neild*, 110 F.2d at 246, 250.  This is part and parcel of why under the Home Rule Act, the President retains complete control over the D.C. National Guard (Opposition at 6, 17 (ECF No. 34)) and has power to request

"services" from the Metropolitan Police Department. *Id.* at 39. As the D.C. Circuit explained, in a related context, "[t]he Framers would naturally have expected that where tensions between local and national interests arose, they could be resolved by Congress with due consideration for the latter." *Banner*, 428 F.3d at 309.

D.C.'s proposed rule of a "sovereign power" able to rush to Court, sue the entity that gives it its existence, and then demand a coordinate branch of Government adjudicate any dispute of any sort it may have with the United States would do violence to this original public meaning. There would be a barrage of litigation. Anytime D.C. did not like an action taken by the Federal Government it could immediately resort to litigation—potentially bringing the governance of the Capitol into a standstill via constant pitched battles at the courthouse. Indeed, we have seen this play out in the course of two months. Because President Trump believes bold national action is necessary, this conflict will likely continue. The normal structural incentives for cooperation, or for that matter, a more permanent and coherent solution derived from "the hurly-burly, the give-and-take of the political process between the legislative and the executive'" are entirely vitiated. *Trump v. Mazars*, 591 U.S. 848, 859 (2018) (quoting *Hearings on S. 2170 et al. before the Subcommittee on Intergovernmental Relations of the Senate Committee on Government Operations*, 94th Cong., 1st Sess., 87 (1975) (A. Scalia, Assistant Attorney General, Office of Legal Counsel)). If this Court hears this case, there will be more litigation; no longer will Congress resolve conflicts—the Courts will. Indeed, depending on how the merits of this case transpire, there may be extended judicial involvement and policing. *Cf.* Trans. of Hr'g at 58:3–14, *District of Columbia v. Trump*, No. 25-cv-2678 (ACR) (Aug 15, 2025) (contemplating continued judicial involvement). That is entirely inconsistent with the design and original public meaning of the District Clause.

### III.    D.C. LACKS AUTHORITY TO BRING THIS ACTION.

1.    Congress has limited the power of D.C. to litigate via its grant of corporate power to "sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code."  D.C. Code § 1-102.  D.C. seeks to maintain this action via the power of the Attorney General of D.C. to sue on behalf of D.C. pursuant to D.C. Code § 1-301.81 which provides in pertinent part that the Attorney General:

> shall possess all powers afforded the Attorney General by the common and statutory law of the District and shall be responsible for upholding the public interest.  The Attorney General shall have the power to control litigation and appeals, as well as the power to intervene in legal proceedings on behalf of this public interest.

Does this power extend to initiating litigation against the United States as a putative sovereign that raises the profound Constitutional questions of standing recounted above?  We submit no.

To start, if the statute is susceptible of a construction that does not raise the serious Constitutional question discussed above, then it should be adopted.  *See* Scalia & Gardiner, Reading Law 197 (2012).

The statutory text is indeed broad in its the general authorization to "sue," but it contains the modifier "not inconsistent with the Constitution and laws of the United States and the provisions of this Code." That modifier suggests that limitations discussed above are baked in as a matter of statutory Construction.  Put differently, if the Constitutional concern discussed above is real, there is no question that a reasonable construction of the statute would be that "sue" does not extend to the Federal Government.

The relevant statutory provision has been the law since 1878 and repeated construction by the Supreme Court does not seem to remotely contemplate the grant of the power asserted here.

*See* 20 Stat 102 (1878). Moreover, in 1878 the application of Dhillon's Rule, that grants of power to a municipal corporation must be express, would give "sue" a narrow ambit that would exclude suing the body that gave the corporation existence. *See* John F. Dillon, *Treatise on the Law of Municipal Corporations* 101–02 (1878). Doubly so with the limiting clause. Indeed, the Court was at pains not to construe a virtually identical grant of authority in the 1871 Organic Act, 16 Stat. 419, as authorizing D.C. to legislate in an area that would likely be considered (and that the Court found) to be an unconstitutional regulation of interstate commerce. *See Stoutenburgh v. Hennick*, 129 U.S. 141, 149 (1889) ("In our judgment congress, for the reasons given, could not have delegated the power to enact the third clause of the twenty-first section of the act of assembly, construed to include business agents such as Hennick, and there is nothing in this record to justify the assumption that it endeavored to do so, for the powers granted to the District were municipal merely."). Such a barren historical record is not dispositive, but again counsels against finding that the power to "sue" (as modified) extends to actions against the United States. *Cf., e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (courts should hesitate to find implied causes of action).

Moreover, there is no clear historical basis for action by a municipal corporation of the sort contemplated here. As noted above, the history is decidedly to the contrary. *See, e.g.*, *City of New York v. State*, 86 N.Y.2d 286, 289–90 (N.Y. 1995) ("Despite their contrary claims, the traditional principle throughout the United States has been that municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation. This general incapacity to sue flows from judicial recognition of the juridical as well as political relationship between those entities and the State. Constitutionally as well as a matter of historical fact, municipal corporate bodies—counties, towns and school

districts—are merely subdivisions of the State, created by the State for the convenient carrying out of the State's governmental powers and responsibilities as its agents.  Viewed, therefore, by the courts as purely creatures or agents of the State, it followed that municipal corporate bodies cannot have the right to contest the actions of their principal or creator affecting them in their governmental capacity or as representatives of their inhabitants.").

**2.**    By the same token, D.C. certainly lacks a cause of action as to its free standing Constitutional Claims premised on the District Clause.  There is no basis whatsoever to think such relief has the requisite historical pedigree in courts of equity in Westminster Hall.  *See Groupo Mexciano v. All Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).

## CONCLUSION

This case should be dismissed because the District lacks power to proceed.

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email: samueledewey@sedchambers.com

KYLE BROSNAN
(No. 90021475)
The Oversight Project
211 N. Union St
Alexandria, VA 22314
Telephone:  (845) 674-5589
Email: Kyle@itsyourgov.org

ERIC NEAL CORNETT
(No. 1660201)
The Oversight Project
211 N. Union St
Alexandria, VA 22314
Telephone:  (606) 275-0978
Email: Neal@itsyourgov.org

*Counsel for Plaintiffs*
