UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DISTRICT OF COLUMBIA**, <br><br> Plaintiff, <br><br> v. <br><br> **DONALD J. TRUMP**, *et al.*, <br><br> Defendants. | Case No.: 1:25-cv-03005 (JMC) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BRIEFING SCHEDULE AND OPPOSITION TO DEFENDANTS' MOTION TO STAY FURTHER DISTRICT COURT PROCEEDINGS**

For nearly six months, National Guard troops have been deployed in the District of Columbia in violation of the Posse Comitatus Act, 10 U.S.C. § 275 and its implementing regulations, the Militia Clauses of the Constitution, and the Administrative Procedure Act's prohibition on arbitrary and capricious agency action. That illegal deployment has now been extended for another year.[1] Yet Defendants' position is that no court should decide the merits of those claims until, at the earliest, the fall of 2026—and likely not until months after that. In effect, they ask for a free pass to continue violating the Nation's foundational limits on military power for well over a year without any further prospect of judicial review.

The Court should reject that request. The District and the public are entitled to prompt adjudication of these claims; they should not be forced to wait until the end of the government's appeal of a preliminary ruling on a separate subset of claims. And bifurcating this case into two sequential stages—thereby extending the life of this case by a year or more and requiring the

---

[1] *See* Dan Lamothe, "Trump officials extend National Guard's D.C. mission through 2026," Wash. Post (Jan. 16, 2026), https://www.washingtonpost.com/national-security/2026/01/16/trump-national-guard-dc/.

1

D.C. Circuit to consider the District's claims piecemeal—is plainly not the more efficient way to proceed. Indeed, now that Defendants have conceded that the documents they produced in discovery may serve as the administrative record, this case is already teed up for decision. The Court should simply convert the extensive briefing it has already received into summary judgment papers, allow each party to file supplemental briefs, and decide the entirety of this case now.

## ARGUMENT

### A. The Court Should Proceed to Summary Judgment Rather Than Staying Proceedings.

Defendants do not meaningfully dispute that this case is ripe to proceed to summary judgment. The Court has already denied Defendants' motion to dismiss as to two claims. ECF No. 88. And it has obtained a full record, received extensive briefing, and heard argument on the remaining three claims. Defendants do not dispute that the norm in Administrative Procedure Act (APA) cases is to decide the case at summary judgment, without first resolving a motion to dismiss. *See, e.g.*, *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 & n.5 (D.C. Cir. 1993); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). That is particularly appropriate here, now that Defendants have conceded that the entirety of the administrative record is before the Court. *See* Opp. 10. Nothing, accordingly, prevents this Court from proceeding directly to summary judgment and fully and finally resolving the case.

That approach, moreover, is plainly in the public interest. The District contends that Defendants are engaged in an ongoing, unprecedented violation of several fundamental limits on the domestic deployment of military power: they have directed more than 2,000 troops under federal command to engage in daily law enforcement work, in violation of both the Posse Comitatus Act (PCA) and 10 U.S.C. § 275 and its implementing regulations, and they have

2

placed state militia troops under pervasive federal command, in contravention of the Constitution's Militia Clauses.  *See* U.S. Const. art. I, § 8, cls. 15-16.  As the Supreme Court has recently affirmed, the "circumstances are exceptional" in which the President may deploy military forces to "execute the laws," and the limits on federal control of state National Guard forces must be carefully observed.  *Trump v. Illinois*, No. 25-A-00443, 2025 WL 3715211 (U.S. Dec. 23, 2025).  The District should not be forced to wait more than a year before any court adjudicates its remaining claims that those foundational limits are being breached on a daily basis.  Such a delay would, in practical effect, deny the District and its residents any relief for these grave and ongoing violations.

Furthermore, delaying resolution of these claims would disserve the D.C. Circuit.  The stay panel pointedly noted that only two of the District's claims were before it.  *See District of Columbia v. Trump*, No. 25-5418, 2025 WL 3673674, at *2 (D.C. Cir. Dec. 17, 2025).  Forcing the D.C. Circuit to resolve those two claims first and then hear the other claims in a subsequent appeal would create numerous inefficiencies.  It would compel the appellate court to adjudicate two consecutive appeals.  It would force the D.C. Circuit to decide each issue separately, rather than permitting it to select the narrowest grounds for its decision.  And it would artificially segment claims that are in fact closely related.  To take one example: if the PCA or section 275 applies to the D.C. National Guard, then those statutes require that any authorization for the deployment of the Guard be "express"—an interpretive burden that undercuts the stay panel's reliance on provisions that do not mention law enforcement at all.  *See, e.g., id.* at *8 (relying on D.C. Code §§ 49-405 and 49-909).  Or to take another: if the Militia Clauses prohibit federal command of state militias, then 32 U.S.C. § 502(f)(1) cannot be construed to authorize the federal government to "order[]" such troops to perform "training or other duty."  *See* Hr'g Tr.

3

19:12–20:22, 34:12-16. The D.C. Circuit should receive briefing on and address all of these claims at once; it is simply inefficient to parcel out the claims for piecemeal appellate consideration.

In contrast with the strong public interest and efficiency considerations weighing in favor of moving this case to a swift resolution, Defendants offer no persuasive rationale for grinding it to a screeching halt. They claim that the District will suffer no harm from delay because the stay panel held that its "preliminary determination that the merits favor the Defendants" on the two claims it considered "means that the District has not identified any ongoing injury to its statutory interests." Opp. 5 (quoting *District of Columbia*, 2025 WL 3673674, at *2). As an initial matter, and with respect, the panel seriously erred in its admittedly "hurried" and "preliminary" analysis of the merits of the claims it considered.[2] In any event, the panel declined to reach even a preliminary conclusion as to the merits of the claims that were *not* before it—and so its decision says nothing about the injury to the District's statutory interests from Defendants' ongoing violations of the PCA, section 275, the Militia Clauses, and the APA's bar on arbitrary and capricious decision-making. Nor did the stay panel consider the District's injuries to its law

---

[2] The District will detail these errors in future briefing, but we briefly highlight one of the most significant: The panel appeared to locate the President's authority for the deployment of the D.C. National Guard (DCNG) in D.C. Code § 49-405, which it construed to authorize the President to "'order out' the D.C. Guard '[w]henever it shall be necessary.'" *District of Columbia*, 2025 WL 3673674, at *8 (quoting D.C. Code § 49-405). But that section—which, tellingly, Defendants have never invoked at any point in this litigation—does not govern the President's authority over DCNG at all. It pertains to the President's authority over the "enrolled militia," which is a body consisting of nearly every "able-bodied male citizen resident" in the District between the ages of 18 and 45. D.C. Code § 49-401. The DCNG is the "organized militia" or the "active militia," which section 49-405 itself distinguishes from the "enrolled militia" in its final sentence. *See id.* § 49-406 ("The organized militia shall be composed of volunteers, and shall be designated the National Guard of the District of Columbia."); *id.* § 49-405 (stating that the Commanding General may assign "[t]he portion of the enrolled militia ordered out or accepted . . . to existing organizations of the active militia"). What is more, section 49-405 does not permit the President to deploy the enrolled militia "whenever it shall be necessary." The immediately adjacent section, D.C. Code § 49-404, expressly states that "the enrolled militia shall not be subject to any duty" except for the two that it expressly lists. D.C. Code § 49-404. And section 49-404 cannot itself be the basis for this deployment, both for the reasons this Court extensively explained, *see* ECF No. 88, at 31-37, and because it, like section 49-405, pertains only to the "enrolled militia."

4

enforcement interests, which the panel expressly left for this Court to address in the first instance. *See District of Columbia*, 2025 WL 3673674, at *12 n.4. More broadly, it is simply implausible to suggest that the District suffers no harm from the ongoing deployment of more than 2,000 troops in its borders in violation of the PCA, section 275, the Constitution, and the APA.

Defendants also suggest that putting this case on ice and forcing the D.C. Circuit to go through two sequential appeals of related issues will somehow save the parties "time and resources." Opp. 5. Just the opposite: because the issues on appeal are not "dispositive" of the District's remaining claims, *cf. Phillipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 89 (D.D.C. 2017), Defendants' proposal will force the parties and the courts to undergo several rounds of additional briefing, a second appeal, and months of prolonged litigation. Defendants' suggestion (Opp. 5) that the D.C. Circuit's ultimate resolution of the preliminary injunction appeal will aid this Court's consideration of the remaining claims gets things backwards. Placing all of the legal claims before the D.C. Circuit at once will facilitate its consideration of the issues already before it (and save it a second appeal, to boot). And it is questionable how much additional guidance the D.C. Circuit's ultimate preliminary injunction decision will provide this Court as to its view of the merits, given that, for example, Defendants argue (wrongly) that they are independently entitled to prevail because they assert that the District suffers no irreparable injury.

Finally, Defendants identify no hardship that they would suffer from the Court fully resolving this case. The best they can muster is the assertion that proceeding to summary judgment briefing will inflict a harm akin to an impairment of the "federal government's 'strong and distinctive interest in the protection of federal governmental functions and property within

5

the Nation's capital,' as well as the substantial disruption that would result from the 'back-and-forth withdrawal and redeployment of guard members pending the completion of litigation.'" Opp. 6 (quoting *District of Columbia*, 2025 WL 3673674, at *2-3, 12). That suggestion refutes itself. To state the obvious: requiring the federal government to defend itself against substantial claims of statutory and constitutional wrong is not a cognizable injury, nor is it similar in any way to the harm caused by purported real-world disruptions of the government's functions or operations. And any conceivable harm that Defendants would suffer from briefing summary judgment now, rather than months from now, is plainly outweighed by the harm the District and its residents would suffer from a months-long delay in the adjudication of the District's claims. As Defendants' own authority makes clear, that lopsided balance of interests demonstrates that their stay motion should be denied. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (an applicant for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else").

### B. The Court Should Not Resolve the Motion to Dismiss Before Proceeding to Summary Judgment.

Pivoting from any attempt to promote efficiency, Defendants make the fallback argument that the Court should complicate district court proceedings still further by first resolving their motion to dismiss, then receiving summary judgment briefing, and then issuing another decision (months later) at the summary judgment stage. As Defendants do not dispute, that approach would be a serious departure from the norm in APA cases, where courts should generally proceed directly to summary judgment. *See, e.g.*, *Am. Bioscience, Inc.*, 269 F.3d at 1083; *Marshall Cnty.*, 988 F.2d at 1226 & n.5. It would also prejudice the District by substantially delaying the entry of any enforceable judgment on the merits of its PCA, section 275, constitutional, and arbitrary-

6

and-capricious claims, allowing Defendants' violations to proceed unimpeded in the interim. And it would eliminate any realistic prospect of the D.C. Circuit resolving all of the District's claims in a single appeal.

Weighed against these defects, it is hard to see what purpose would be served by Defendants' alternative proposal. They suggest that their approach would avoid "needless merits litigation" if (and only if) they prevail on their motion to dismiss. Opp. 8. But putting aside the relative likelihood of that outcome, the parties have already extensively briefed the merits of this case on a substantial record. As Defendants themselves highlight, the legal issues at the summary judgment stage will be identical to those at the motion to dismiss and preliminary injunction stage. *See* Opp. 7-8. Deciding those same issues at two stages will multiply, not reduce, the amount of merits litigation.

Further, both parties agree that the record need not be supplemented further for the Court to proceed to summary judgment. *See* Opp. 9-10; *AAR Airlift Grp., Inc. v. U.S. Transp. Command*, 161 F. Supp. 3d 37, 41 & n.1 (D.D.C. 2015) (deciding cross-motions for summary judgment without production of formal administrative record because "the documents that would comprise all or the vast majority of the administrative record" were produced as exhibits during preliminary injunction briefing); ECF No. 88, at 13 n.8 (waiving Local Rule 7(n) on this basis). And the District has proposed that the Court require only limited supplemental briefs from each party before deciding the case in a summary judgment posture, *see infra* p. 8—supplemental briefing that would be equally appropriate if this Court were to decide the motion to dismiss, given the intervening developments that have occurred since briefing concluded. *See* Mot. 6. Deciding the motion to dismiss first would thus reduce neither record-production nor briefing burdens on Defendants. Its only evident calling card is that it would give Defendants additional

7

months to violate the PCA, section 275, the Constitution, and the APA without facing the risk of an enforceable judgment.

### C. The Court Should Order Limited Supplemental Briefing Before Proceeding to Summary Judgment.

Because Defendants have now acknowledged that discovery serves "as an appropriate alternative to an administrative record," Opp. 10, an extensive summary judgment briefing schedule is unnecessary.[3]  As noted, the parties have already briefed the merits of this case following expedited discovery in which Defendants produced the key decisional documents and numerous relevant orders and communications.  Additional summary judgment briefs based on the same record would be wholly duplicative of those filings.  The Court should thus convert the parties' existing briefing into summary judgment papers and allow each party to file supplemental briefs addressing the D.C. Circuit's stay decision and any other relevant developments.

Accordingly, the District proposes the following schedule:

- **February 15, 2026:** Parties file simultaneous supplemental briefs.

- **March 1, 2026:** Parties file simultaneous supplemental reply briefs.

A proposed order reflecting this revised proposal is attached as Exhibit A.

Defendants suggest that, instead of entering a summary judgment briefing schedule, the Court should give the parties an opportunity to further negotiate the schedule because "circumstances may have changed such that an alternate schedule may be appropriate." Opp. 10. Defendants' delay in providing their position on this motion, and the weeks that they have

---

[3] When the District sought Defendants' position on this motion on Tuesday, December 23, it specifically noted that it would consent to shortening the summary judgment briefing schedule if Defendants certified that discovery constituted the complete administrative record.  Despite the District's repeated requests, Defendants did not state their position on the District's motion until the afternoon of Friday, January 2, and their response still failed to provide Defendants' position on whether discovery could serve as the administrative record.

chosen to expend briefing their opposition and filing a cross-motion, have already delayed by nearly a month the continuation of proceedings in this Court. Additional "negotiat[ions]" would only produce additional, unnecessary delay, and it is wholly unclear what changed circumstances might affect the scheduling of this case. Nonetheless, if the Court wishes the parties to negotiate a schedule, the District requests that it order the parties to provide a proposed schedule within 48 hours of its order on this motion.

## CONCLUSION

For the foregoing reasons, the District respectfully requests that the Court order the schedule for summary judgment briefing set forth above.

Date:   January 21, 2026        Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

EMMA SIMSON (D.C. Bar No. 1026153)
ELIZA H. SIMON (D.C. Bar No. 90035651)
Senior Counsels to the Attorney General

/s/ Mitchell P. Reich
MITCHELL P. REICH (D.C. Bar No. 1044671)
Senior Counsel to the Attorney General

ANDREW MENDRALA (D.C. Bar No. 1009841)
Assistant Attorney General
Office of the Attorney General for
 the District of Columbia
400 6th Street NW, 10th Floor
Washington, D.C. 20001
Tel: (202) 724-9726
Andrew.Mendrala@dc.gov

*Attorneys for the District of Columbia*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DISTRICT OF COLUMBIA**,<br><br>            Plaintiff,<br><br>      v.<br><br>**DONALD J. TRUMP**, *et al.*,<br><br>            Defendants. | Case No.: 1:25-cv-3005(JMC) |

### [PROPOSED] ORDER

Plaintiff the District of Columbia's Motion for Summary Judgment Briefing Schedule is **GRANTED**.

It is **ORDERED** that:

1) The parties' briefs pertaining to Plaintiff's Motion for a Preliminary Injunction and Section 705 Stay and Defendants' Motion to Dismiss shall be converted to briefs in support of cross-motions for summary judgment;

2) The parties may file supplemental briefs in support of their cross-motions for summary judgment by February 15, 2026; and

3) The parties may file supplemental reply briefs in support of their cross-motions for summary judgment by March 1, 2026.

**SO ORDERED.**

Date: _____                          _____
                                                                          JIA M. COBB
                                                                          United States District Judge